**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| v. | : CRIMINAL NO. 24-121 (CRC) |
| **STEPHEN MICHAEL BAKER** | : |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**
**TO MODIFY CONDITIONS OF PRETRIAL RELEASE**

The United States of America hereby respectfully responds to Defendant Stephen Michael Baker's Motion to Modify Conditions of Pretrial Release.

A. **BACKGROUND**

On March 7, 2024, defendant Stephen Michael Baker ("Baker") was charged in a four-count Information with Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. §1752(a)(1) (Count One); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. §5104(e)(2)(D) (Count Three); and, Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four).

As Baker correctly notes, at the time of his initial appearances both in the Northern District of Texas and in the District of Columbia, the government did not request a detention hearing pursuant to 18 U.S.C. § 3142(f). ECF 18 at 2, 4. Instead, the government requested that Baker be released and as is customary, also requested that the Courts impose "standard" conditions of release found in 18 U.S.C. § 3142(c)(1). Indeed, at the initial appearance held in the Northern District of Texas on March 1, 2024, and in the District of Columbia, at the government's request and the recommendation of the office of Pretrial Services, the Court imposed essentially the same

conditions without objection by Baker's counsel. In the District of Columbia, the following conditions were imposed:

1. The defendant must not violate federal, state, or local law while on release.

2. The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

3. The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

4. The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

7. The defendant must:

    (a) submit to supervision by and report for supervision to the PSA for the Middle District of North Carolina/Durham;

    (d) surrender any passport to: PSA;

    (e) not obtain a passport or other international travel document;

    (f) abide by the following restrictions on personal association, residence, or travel: Defendant to notify PSA in the Middle District of North Carolina/Durham in advance of all travel outside of that district. Court to approve all other travel outside of the Continental United States;

    (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Special Agent Craig Noyes;

    (k) not possess a firearm, destructive device, or other weapon;

    (s) report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops;

    (t) Verify your address with Pretrial Services Agency, Comply with courtesy supervision for the Middle District of North Carolina/Durham. Stay out of D.C. except for meetings with attorney, PSA business, court, and employment. Defendant must notify PSA before traveling to Washington D.C. for employment.

ECF 13.

Baker now argues that all of the "standard" conditions should be removed. ECF 18 at 3. He specifically requests that the "standard" conditions involving possession of a firearm, contact with law enforcement, and notice to pretrial services prior to travel to Washington, D.C. be either removed or modified. Below, the government states its disagreement with modification of the firearm and notification to pretrial services prior to travel to D.C. conditions. The government is amenable to a limited modification of the condition that Baker report "every" contact with law enforcement personnel and proposes that the parties engage in discussion with the United States Pretrial Services officer assigned to Baker to reach an acceptable resolution.[1]

B. ARGUMENTS

1. "Standard" Conditions of Release May Be Imposed Without a Detention Hearing.

Although Baker repeatedly acknowledged that the government did not seek detention in his case, at length and without purpose he addresses what is required for a detention hearing. On no less than three instances, Baker referenced *United States v. Munchel,* 991 F.3d 1273 (D.C. Cir. 2021), a case where the government moved for Munchel's detention and engaged in a detention hearing with the Court. Because the government did not seek Baker's detention, the references to *Munchel* are inapt and meaningless.

Based on the offenses charged, the government did not move for a pretrial detention hearing under 18 U.S.C. § 3142(f)(2)(A), (B), which requires proof that the case involves a serious risk that the defendant will flee or that there exists a serious risk that the defendant is a danger to the community, that is, the defendant "will obstruct or attempt to obstruct justice, or threaten,

---

[1] Counsel for the government was unsuccessful in the efforts made to communicate with the Pretrial Services officer regarding the modifications requested by Baker prior to submitting this response; however, subject to input from Pretrial Services, the United States is willing to consider a requirement that Baker need only report contact with law enforcement when the law enforcement agent or officer is acting in an official capacity.

3

injure, or intimidate, a prospective witness or juror." The government did not consider Baker to be either a risk of flight or danger to the community. However, the absence of a detention hearing did not preclude the Court from imposing the "standard" conditions of release.

Without legal support, Baker argues that the Court could only impose "standard" conditions of release after a detention hearing. ECF 18 at 3. Title 18, United States Code, Sections 3142(a) and (b) are devoid of reference to any language which makes a detention hearing a prerequisite to the Court ordering the "standard" conditions. Accordingly, Baker's argument that a detention hearing was necessary is meritless. Furthermore, as previously stated, Baker's counsel did not oppose the imposed conditions of pretrial release at the time of the initial appearances. 18 U.S.C. §3142(c)(3) provides that a court can amend an order at any time to impose new or different conditions of release; however, courts considering this provision have consistently held that a defendant seeking a change in conditions must show new information not previously known. *See United States v. Peguero*, 2021 WL 4811315 at *2 (W.D. Ky. Oct. 14, 2021) (collecting cases and describing the defendant's contrary position as untenable); *United States v. Wang*, 670 F. Supp. 3d 57 (S.D.N.Y. 2023), aff'd, 2023 WL 4551637 (S.D.N.Y. July 14, 2023); *United States v. Ross*, 2024 WL 1890087 (E.D. Tenn. Apr. 30, 2024) (same, citing *Peguero*); *United States v. Chambers,* 23-20009-DDC, 2023 WL 8254523 (D. Kan. Nov. 29, 2023) (same). Here, Baker has not demonstrated that anything has changed since the time of his initial appearances. Indeed, he has the same employment and roommate that he had in March 2024 when the conditions of pretrial release were imposed. Since nothing has changed, there is no reason to modify any of the previously imposed conditions of pretrial release.

2.      The Condition Restricting Access to a Firearm is Appropriate

The Bail Reform Act of 1984, 18 U.S.C. § 3141-3156, expressly authorizes judicial officers to release a defendant pretrial subject to conditions determined to be reasonably necessary to assure the defendant's future appearances or the safety of individuals or the community. 18 U.S.C. § 3142(c). One such restriction commonly determined to be necessary to assure the safety of the community is the prohibition on the possession of firearms. 18 U.S.C. § 3142(c)(1)(B)(viii).

To determine the appropriate conditions of release, including the prohibition of a defendant possessing a firearm, the Court should consider (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence;" (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. §3142(g). These factors establish that the prohibition barring Baker from possessing a firearm during pretrial release, is not unduly restrictive. Regarding the nature and circumstances of the offenses charged, the events of January 6, 2021, are unprecedented. The attack "was an assault on the Capitol, and it was an assault on democracy." *United States v. Hodgkins*, 21-cr-0188 (RDM), Tr. At 71. It resulted in significant injuries to law enforcement officers who were protecting the Capitol and members of Congress from the mob.

On January 6, 2021, Baker traveled from the Ellipse to the Capitol Building. He recorded police officers attempting to keep rioters off the grounds and out of the building. As he neared the Capitol, Baker captured video from the west side of the Capitol Reflecting Pool near a location where gallows had been constructed and recorded himself saying, "Look out your windows bitches, look what's coming." He subsequently recorded himself as he entered the Capitol and travelled through it. After exiting the Capitol on January 6, and on subsequent days, Baker bragged

about being inside the Capitol and heralded the activities that he witnessed, including on a YouTube video and in interviews, stating,

> *Once the crowd started moving in, I went, "I gotta get this too, man." So I started following them into the Cap- and we got in, and it was free reign for the most part inside the building. In fact, we even got into.. I-I was in Pelosi's office. I mean we went into Pelosi's office.*
>
> *The only thing I regret is that I didn't like steal their computers because God knows what I could've found on their computers if I'd done that. But by the time I got into Pelosi's office, unfortunately there was some damage done.*
>
> *As I was exiting Pelosi's office the sign was being busted up into little pieces and people were collecting it as souvenirs.*
>
> *Pelosi's office was... ehhh.. They got Pelosi's office and you know, it couldn't happen to a better deserving bitch.*

Considering these facts, the condition imposed by the Court prohibiting Baker from possessing a firearm as a condition of pretrial release is appropriate. His employment does not require him to possess a firearm and he has made an insufficient argument regarding self-defense. Although he has claimed that he has an alleged stalker who follows his movements, it is Baker who regularly posts on the internet and shares his location information. Rather than this case bringing him undue attention, Baker's choices have placed him in the public's eye and even then, he has described a single individual who has followed him. In that instance, Baker has not claimed that he contacted local law enforcement and has not provided a police report or offered any other proof that supports his argument.

Furthermore, even where, as here, the charges against Baker do not involve the use of firearms, the condition prohibiting possession of firearms is recognized as necessary and appropriate in many cases for the protection of persons, including Pretrial Services Officers responsible for supervising pretrial releases. Permitting a defendant to keep a firearm on his person or at his residence poses an unreasonable risk to the officers who may need to conduct a home visit

or visit with the defendant without warning. This view is shared here and across the country. *See United States v. Kastner*, No. 21-cr-725 (RDM) (ECF 42 at 6)[2] (denying request to modify release conditions of January 6 defendant charged with the same non-violent misdemeanors as Baker to permit firearms in his home in light of concerns of supervising Pretrial Services officers); *United States v. Slye*, 2022 WL 9728732, at *3 (W.D. Pa. Oct. 6, 2022) *citing United States v. Perez-Garcia,* 2022 WL 4351967, at 4 (S.D. Cal. Sept. 18, 2022) (this condition is regularly imposed in this and other judicial districts because it serves to ensure the safety of Pretrial Services Officers who conduct home and work site visits), *aff'd* 96 F.4th 1166 (9th Cir. 2024), and *United States v. Smedley*, 611 F. Supp. 2d 971, 964 (E.D. Miss. 2009) (a precaution to safeguard pretrial services officers who have contact with defendant in their supervisory duties).  Therefore, in balancing the safety of Pretrial Services officers with Baker's personal desire to possess firearms, the government submits that Baker has failed to offer a compelling, countervailing narrative that justifies the elimination of the firearm restriction.

Baker raises another argument that the firearm restriction presents a hardship because his roommate has a gun collection in a locked safe. This should also be addressed, and also merits a conversation with Pretrial Services. Baker has not addressed why the temporary removal of the guns would be a hardship, but in any event, a condition's inconvenience for a defendant (never mind a third party) is not a reason to modify the condition. *United States v. Gay¸*2020 WL 5983880, * 3 ((C.D. Ill. Oct. 7, 2020); s*ee also United States v. Lee*, 451 F. Supp. 3d 1, 7 (D.D.C. 2020), a detention case where then Judge Ketanji Brown Jackson instructed "the relevant statutory inquiry

---

[2] The *Kastner* case was reassigned to Magistrate Judge Moxila Upadhyaya after the decision cited above was issued.

is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial)." *Id*. at 7 (original emphasis).

    3.    <u>The Court Should Receive Input From Pretrial Services Regarding Modification of the Condition Concerning Law Enforcement Contact.</u>

Subject to input from Pretrial Services, the United States is willing to consider revising the requirement for Baker to report every contact with law enforcement to a condition that requires him to report every contact with law enforcement where law enforcement personnel act in an official capacity.

    4.    <u>The Condition that Baker Give Notice to Pretrial Services Prior to Entering Into Washington, D.C. Should Not Be Modified.</u>

Baker argues that he has made numerous visits to Washington, D.C. since January 6, 2021, without incident, and that requiring him to give Pretrial Services notification prior to his visits while on pretrial release violates his First Amendment rights. ECF 18 at 15. Once again, Baker cites no legal or factual support for this constitutional claim. If all he has to do is report that he will be in the District of Columbia for his employment, that does not demonstrate an interference with his First Amendment rights.

The government is unable to comprehend how a less than one minute telephone call or succinct email that fulfills the pretrial release condition of release is unconstitutional. Furthermore, Baker may have moved freely in and out of Washington, D.C. prior to March 14, 2024, but as of March 14, 2024, the Court imposed the notification restriction and Baker has shown no reason that warrants rescinding the condition.

Furthermore, given the seriousness of Baker's activities on January 6, 2021 during a riot and the need, especially in a highly charged election year, to ensure the safety of this community which the notification condition is intended to do in the least restrictive way, the pretrial release notification condition should not be modified. Many other January 6, 2021 defendants are

restricted from entering the District of Columbia as a condition of release, except for court hearings or meetings with counsel. Thus, travel to the District of Columbia is not a 'right,' particularly for someone who does not reside in or nearby the District, while on pretrial release and is not a concession that should be made.

5.  Conclusion

Baker's current conditions of release are reasonable.  Because Baker does not explain how circumstances have changed since those conditions were imposed or what new information supports their revision, his motion to modify conditions should be denied.

    Respectfully submitted,

    MATTHEW M. GRAVES
    United States Attorney
    D.C. Bar No. 481052

    /s/ *Anita Eve*
    ANITA EVE
    Assistant United States Attorney
    Pennsylvania Bar No. 45519
    615 Chestnut Street, Suite 1250
    Philadelphia, PA 19106
    (215) 764-2177
    anita.eve@usdoj.gov

    ADAM M. DREHER
    Assistant United States Attorney
    Michigan Bar No. P79246
    601 D. St. N.W.
    Washington, D.C. 20530
    (202) 252-1706
    adam.dreher@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response to Defendant's Motion to Modify Conditions of Pretrial Release has been filed electronically on the Electronic Case Filing system and is available for viewing and downloading from the ECF system, and was served by electronic mail on the following defense counsel:

William L. Shipley, Jr., Esquire
808Shipleylaw@gmail.com

James Lee Bright, Esquire
JLBrightLaw@gmail.com

    /s/ Anita Eve
ANITA EVE
Assistant United States Attorney
Pennsylvania Bar No. 45519
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 764-2177
anita.eve@usdoj.gov

DATED:  May 3, 2024