UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 24-cr-00121-CRC |
| | ) | |
| **STEPHEN BAKER,** | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

# DEFENDANT STEPHEN BAKER'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO MODIFY TERMS AND CONDITIONS OF PRETRIAL RELEASE

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

JAMES LEE BRIGHT
Attorney at Law
3300 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
Office: 214-720-7777
JLBrightLaw@gmail.com

1

> "The constitutional right to travel from one State to another … occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized. In *Crandall v. Nevada*, 6 Wall. 35, invalidating a Nevada tax on every person leaving the State by common carrier, the Court took as its guide the statement of Chief Justice Taney in the *Passenger Cases*, 7 How. 283, 48 U. S. 492: "For all the great purposes for which the Federal government was formed, we are one people, with one common country.  We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States."

*United States v. Guest*, 383 U.S. 745, 757-58 (1966).

By the District of Columbia Organic Act of 1871 ([16 Stat. at 419, 426 Chap. 62, Sec. 34](#)), in the final sentence of Sec. 34, Congress expressly extended the Constitution and laws of the United States to the District of Columbia.

Yet at page 9 of the Government's Opposition to Mr. Baker's motion, the following claim is made 9:

> "[T]ravel to the District of Columbia is not a 'right,' particularly for someone who does not reside in or nearby the District, while on pretrial release…. "

The fact that neither the Opposition's author nor any supervisor in the Department of Justice saw reason to question the inclusion of this sentence reflects an almost comedic level of legal "analysis" reflected in the Opposition. To suggest the Opposition Memorandum is an effort to "oppose" simply for the sake of "opposing" probably does not miss the mark by too very much.

1. The Government Does Not Challenge the Claim That the Procedures Used To Impose Conditions of Pretrial Release On Mr.

> Baker Did Not Comply with the Bail Reform Act's Statutory Structure.

The Government begins with the concession that it never requested at the detention hearing to establish a need for conditions of pretrial release for Mr. Baker.

> As Baker correctly notes, at the time of his initial appearances both in the Northern District of Texas and in the District of Columbia, the government did not request a detention hearing pursuant to 18 U.S.C. § 3142(f).  ECF 18 at 2, 4. Instead, the government requested that Baker be released and as is customary, also requested that the Courts impose "standard" conditions of release found in 18 U.S.C. § 3142(c)(1).

Government Response at p. 1.

Section 3142(f) is the only basis upon which the Government can request a detention hearing under the Bail Reform Act.   Absent a detention hearing, the Government is not entitled to request "standard" conditions under Sec. 3142(c)(1) -- "customary" or not.   The Government's rationale seems best summed up as, "But we've always done it this way."   Consistency is not a justification for continuing to violate the procedural requirements in a statute that exist to protect the liberty interests of the defendant who is presumed innocent.  Section 3142(c)(1) begins:

> ***If the judicial officer determines*** that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person [on conditions of release].... [Emphasis added].

No such determination made by a judicial officer because the Government never asked for one, and no judicial officer made one via his/her *sua sponte* motion under the statute.

Conditions of release are intended to mitigate 1) risk of flight, and/or 2) danger to the community (including possible obstructive behavior) when those factors are found to be present by a judicial officer.  Conditions are only appropriate "*If the judicial officer determines*…" that a personal recognizance release is not appropriate because such concerns exist based on evidentiary findings.   There is no basis in the statutory text for the Government's view that it could "wave-off" Section 3142(b)'s "personal recognizance" release by simply asking the magistrate to jump to "standard conditions" under Sec. 3142(c) simply because it wants them.    Yet that is what the Government has done routinely in January 6 cases, imposing burdens on the constitutional rights of alleged misdemeanants such as it has done to Mr. Baker here.

As noted below, the Government concedes that Mr. Baker is neither a flight risk nor a danger to the community.  Why then are pretrial release conditions are needed?

The Opposition reflects a misunderstanding about the procedural protections – for the defendant -- in the Bail Reform Act – i.e., that infringements on a defendant's liberty can only be imposed after a detention hearing results in certain foundational showings by the Government and conclusions by a judicial officer based on that showing.  It is only at a detention hearing – held pursuant to a motion by the Government or upon the motion of the judicial officer -- that conditions of pretrial release are fashioned to mitigate the risk(s) identified during the hearing and thereby allowing a

4

defendant to be released pending trial.  This lack of understanding is reflected in the following passage from p. 3:

> Based on the offenses charged, the government did not move for a pretrial detention hearing under 18 U.S.C. § 3142(f)(2)(A), (B), which requires proof that the case involves a serious risk that the defendant will flee or that there exists a serious risk that the defendant is a danger to the community, that is, the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror." ***The government did not consider Baker to be either a risk of flight or danger to the community.***

[Emphasis added.]

The Government's Opposition cannot survive this concession – it had no proof that this case involved a serious risk of flight or danger to the community, and it does not consider Mr. Baker a flight risk or danger to the community.  There is no finding of such by a judicial officer and such a finding is a prerequisite for imposition of the "standard conditions" under Sec. 3142(c)(1).  Mitigating those risks – where they are found to exist -- is the only basis upon which conditions of pretrial release can be imposed.

The Government's Opposition continues in its atextual view of Sec. 3141 at p. 4:

> Title 18, United States Code, Sections 3142(a) and (b) are devoid of reference to any language which makes a detention hearing a prerequisite to the Court ordering the "standard" conditions. Accordingly, Baker's argument that a detention hearing was necessary is meritless.

5

Again, this is the crux of the argument made in the Motion – when there is no detention hearing, and no factual finding of "risk of flight" and/or "danger to the community," only subsections 3142(a) and (b) apply.  That is why they are devoid of any reference to any language that makes a detention hearing a prerequisite.   "Standard" conditions are imposed under subsection (c) *after* a finding of "risk of flight" and/or "danger to the community" at a detention hearing.

No such hearing took place here – as the Government admits – no such findings were made, and the "standard conditions" under Sec. 3142(c) are not, as a result, appropriate.

With no detention hearing and no requisite findings, a "personal recognizance" release under Sec. 3142(b) is required.   The only conditions appropriate for such a release are specified in that subsection.  All other conditions now imposed on Mr. Baker must be removed.

    2.    The Government's Response Doesn't Even Attempt to Respond to the Changes in Second Amendment Jurisprudence that Require Removal of the Firearms <u>Restriction</u>.

After admitting – as quoted above – that the Government does not believe Mr. Baker poses a risk of flight or a danger to the community, the Government's Response argues as follows on p. 5:

> The Bail Reform Act of 1984, 18 U.S.C. § 3141-3156, expressly authorizes judicial officers to release a defendant pretrial subject to conditions determined to be reasonably necessary to assure the defendant's future appearances or the safety of individuals or the community. 18 U.S.C. § 3142(c). One such restriction commonly determined to be necessary to assure the safety of the community is the prohibition on the possession of firearms. 18 U.S.C. § 3142(c)(1)(B)(viii).

The Government has conceded that it does not view Mr. Baker as a danger to the community. No judicial officer has determined otherwise. Thus, even the Government's own reading of the statute makes plain that infringing on Mr. Baker's Second Amendment right to possess and carry a firearm for his self-defense is not authorized by the statute.

After admitting that no detention hearing was held in either this Court or the Northern District of Texas, the Government analysis next jumps to the four-pronged analysis set out in Sec. 3142(g):

> 1) nature and circumstances of the offense,
>
> 2) the weight of the evidence,
>
> 3) history and characteristics of the defendant, and
>
> 4) nature and seriousness of the danger posed by release.

These are the four factors that would ordinarily be considered by the Court during a detention hearing when fashioning terms and conditions of pretrial release – if the Government had made a motion for such a hearing. What relevance they have under the circumstances of this case where no detention hearing was asked for, and none was conducted, is not explained.

The Government's Opposition recounts some of the allegations made against Mr. Baker as set forth in the Affidavit in support of the criminal

7

complaint filed in this case. But these have no relevance at this juncture given that the Government has conceded that Mr. Baker is not a danger to the community.

Without addressing the Supreme Court's recent jurisprudence on the Second Amendment's guarantee of the right to possess a firearm, the Government claims that Mr. Baker's "self-defense" argument is "insufficient." It blames Mr. Baker's presence on social media for calling attention to himself and his case, thereby creating the potential for danger to his safety.

The Government's argument seems to be that if Mr. Baker would surrender his First Amendment right to political free speech and his journalistic endeavors, that could meaningfully reduce the risk of harm that might now be present while he is unable to defend himself from others who might intend him harm. Amazingly – yet again – the Government seems to not realize that its argument supports the basis of Mr. Baker's motion.

Yes -- Mr. Baker has a noteworthy presence on social media. He is a journalist for Blaze Media, an online media company based on Dallas, Texas, made popular by its former owner, nationwide television and radio personality Glenn Beck.

Yes – for more than 32 months Mr. Baker has recounted in social media and online media the developments of the Government's investigation of him, including interviews he gave to the FBI and his response to a grand jury subpoena for materials related to his reporting on January 6, 2021.

Yes – this attention has created an environment in which Mr. Baker has had individuals travel from various parts of the country to confront him about his reporting.

Yes – prior to being charged with four misdemeanors in this case, Mr. Baker always carried a firearm with him for self-defense during his personal and job-related travel.

In the first paragraph of the Supreme Court's opinion in <u>New York State Rifle & Pistol Assn., v. Bruen</u>, 597 U.S. __.  2022 WL 2251305 (2022), the Court made its holding clear:

> In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

Mr. Baker's motion raised *Bruen* and his express Second Amendment right to self-defense as the justification for eliminating the firearms restriction imposed.  The Government's Opposition does not address *Bruen* at all. Instead, the Government cites cases in this District and elsewhere holding that the firearms restriction was properly applied to the defendants in those case. The Government did leave out *United States v. Horn*, 21-cr-00301 (TJK), where Judge Kelly amended the defendant's conditions of release to remove the firearms restriction based on arguments made by Defendant Horn – charged only with four misdemeanors -- that are identical to the arguments made here by Mr. Baker.  See ECF No. 35.

The cases that the Government does cite are as follows:

9

*United States v. Kastner*, 21-cr-725 (RDM):  The opinion by Judge Moss is dated May 22, 2022 – approximately 5 weeks before the Supreme Court's decision in *Bruen* recognizing the Second Amendment right to carry a firearm for purposes of self-defense while away from home.  Thus, the argument made before Judge Moss was not the same argument made by Mr. Baker here.  Further, the defendant in *Kastner* was only contesting a firearms restriction that prohibited him from possessing a firearm at his residence where he might be visited by Pretrial Services.  The defendant was allowed to possess a firearm for safety and security purposes at his church.  Key to the Court's decision was that the Pretrial Services Office in the Southern District of Ohio opposed the Defendant's request on safety grounds – contrary to the claim made by Defendant's counsel in the motion.

*United States v. Slye*, 2022 WL 9728732 (W.D.Pa Oct. 6, 2022):  This case involved a January 6 defendant who made his initial appearance in the Western District of Pennsylvania – where a detention hearing was held.  The defendant was charged with two felonies – violations of Sections 111 and 231 – as well as the same four misdemeanors charged here.  The Court's opinion noted that the defendant was charged with crimes of violence, unlike Mr. Baker here.

*United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024):  Consolidated appeal by co-defendants charged with illegal possession of 110 firearms, including 10 unregistered and untraceable "ghost guns," 4 silencers, 3 short-barreled rifles, thousands of rounds of ammunition, including armor-piercing and incendiary rounds and a tear-gas grenade.  A customs inspection of a

vehicle in which one was a passenger discovered approximately eleven kilograms of methamphetamine and half a kilogram of fentanyl. Both defendants were charged with multiple felony offenses.

*United States v. Smedley*, 611 F.Supp.2d 971 (E.D.Miss 2009): the defendant was charged with receiving and possessing child pornography which had been sent in interstate commerce.  This is a *pre-Bruen* case, and the constitutional implications of *Heller* and *Bruen* are not addressed in the opinion.  Further, the Court's opinion noted that other federal statutes – 18 U.S.C. Sections 922(d) and (m) -- made it a crime for a person under indictment for a felony offense to possess, receive, or sell a firearm, thereby justifying the firearms restriction as part of the condition that the defendant not violate any state or federal law while on release.  *Id.* at 974.

None of the cases cited above are useful for the purposes of deciding Mr. Baker's motion. They are either inapposite on their facts, or the nature of the relief sought is different than the relief sought here.  Three involved defendants charged with felonies where detention hearings were held and a judicial determination was made that release conditions were necessary to mitigate the risk of danger to the community.  No such determination has been made here, and the Government concedes such a determination cannot be made.

At its core, the Government's opposition on this issue returns to the "But we've always done it this way" excuse.

       3.     There Is No Justifiable Purpose Served By The Condition That Mr. Baker <u>Notify Pretrial Services Of Planned Travel To The District of Columbia</u>.

11

Shortly after the GOP takeover of the House of Representatives in early 2022, Mr. Baker was one of three journalists given access to all 41,000 hours of video evidence in the possession of Congress about January 6. He has spent hundreds of hours – often working alongside committee staff – watching video evidence. That work continues to this day.

Because of Mr. Baker's employment and his ongoing work with the House of Representatives, the Government and Pretrial Services agreed that a modification was appropriate to the "Stay out of the District of Columbia except for Court" condition imposed as a matter of course on nearly all January 6 defendants. That condition was modified when imposed to require only that Mr. Baker provide notice to Pretrial Services of any plans to enter the District of Columbia for work or court purposes. That necessarily means he would be providing notice of the timing of his work with Congress because that is the only reason why he enters the District.

No purpose is served by this notification requirement. The Government cannot articulate what function it serves for Pretrial Services to have advance notice of Mr. Baker's work with Congress. It might seem to be a *de minimis* burden on his liberty interest – notwithstanding the farcical claim by the Government that he has no "right" to travel into the District since he doesn't reside there – but it is a burden nonetheless.

Rather than justify the need for the call, the Government proclaims that it "cannot comprehend how a less than one-minute telephone call" is unconstitutional – misstating the basis for the motion.

The point of the motion is that Mr. Baker should not be obligated to provide information to any government agency about his First Amendment-protected work as a journalist -- work he is doing with a separate and co-equal branch of government -- unless there is a justifiable basis in the fact for requiring such notice. No such basis has been established here by the Government. Absent such a showing, the First Amendment's protection of Mr. Baker's work should prevail.

Dated: May 10, 2024                    Respectfully submitted,

William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com


/s/ James Lee Bright
JAMES LEE BRIGHT
Attorney at Law
State Bar No.: 24001786
3300 Oak Lawn Avenue, Suite 700
 Dallas, Texas 75219
Office: 214-720-7777