```
                     UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
    vs.                      ) CASE NO. 1:24-cr-00121-CRC
                             )
STEPHEN MICHAEL BAKER,       )
                             )
        Defendant.           )
_____)


     TRANSCRIPT OF REMOTE PROCEEDINGS VIA VIDEOCONFERENCE
                      FIRST APPEARANCE
   BEFORE THE HONORABLE MOXILA A. UPADHYAYA, U.S. MAGISTRATE
                        March 14, 2024
                    12:51 p.m. - 1:09 p.m.
                        Washington, DC
```

**FOR THE GOVERNMENT:**
    OFFICE OF THE UNITED STATES ATTORNEY
    BY:  Adam Michael Dreher
    601 D Street, NW
    Washington, DC 20530
    (202) 252-1706

**FOR THE DEFENDANT:**
    LAW OFFICES OF WILLIAM L. SHIPLEY
    BY:  William Lee Shipley, Jr.
    PO Box 745
    Kailua, Hawaii 96734

    FORMERFEDSGROUP.COM, LLC
    BY:  Bradford L. Geyer
    141 I Route 130 South, Suite 303
    Cinnaminson, New Jersey 08077
    (856) 607-5708

---

**SONJA L. REEVES**
**Registered Diplomate Reporter**
**Certified Realtime Reporter**
**Federal Official Court Reporter**
Transcript Produced from the Digital Record

1   EDWARD L. TARPLEY, JR.
    BY:  Edward L. Tarpley, Jr.
2   819 Johnston Street
    Alexandria, Louisiana 71301
3   (318) 487-1460

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (Call to Order of the Court at 12:51 p.m.)
2              DEPUTY CLERK:  Good afternoon, Your Honor.
3              This is Criminal Case Number 24-121, the *United States*
4  *of America versus Stephen Michael Baker*.
5              The defendant is present by video.  This matter is set
6  for a first appearance in the district.
7              Parties, please introduce yourselves for the record,
8  starting with the government.
9              MR. DREHER:  Good afternoon, Your Honor.  Adam Dreher
10 on behalf of the United States.
11             THE COURT:  Good afternoon.
12             MR. SHIPLEY:  Good afternoon, Your Honor.  William
13 Shipley, Edward Tarpley and Brad Geyer on behalf of defendant
14 Stephen Baker, who is present via videoconference and consents
15 to appear in that fashion today.
16             THE COURT:  Okay.  Good afternoon, Counsel.
17             Good afternoon, Mr. Baker.
18             THE DEFENDANT:  Good afternoon.
19             THE COURT:  Could we go ahead and -- oh, I'm sorry,
20 Ms. Dahlkoetter.
21             OFFICER DAHLKOETTER:  Good afternoon, Your Honor.
22 Britney Dahlkoetter, on behalf of the Pretrial Services Agency.
23             THE COURT:  Good afternoon.  Could we please swear in
24 Ms. Baker --
25             DEPUTY CLERK:  Yes, Your Honor.

```
 1            THE COURT:  -- or Mr. Baker.
 2            DEPUTY CLERK:  Mr. Baker, please raise your right
 3   hand.
 4            Do you solemnly swear that you will well and truly
 5   answer all questions propounded to you, so help you God?
 6            THE DEFENDANT:  I do --
 7            DEPUTY CLERK:  Thank you.
 8            THE DEFENDANT:  -- solemnly swear.
 9            DEPUTY CLERK:  Thank you.
10            THE COURT:  Okay.  Given that we just have one Capitol
11   case today, I'm not going to do the whole joint hearing, we'll
12   just cover all the steps in the individual case.
13            I would just like to first check -- Mr. Shipley, are
14   you and your colleagues retained or is Mr. Baker seeking
15   appointment of counsel?
16            MR. SHIPLEY:  No, Your Honor.  We're all retained.
17            THE COURT:  Okay.  Very well.
18            Okay.  Mr. Dreher, I'd just like to remind you that
19   pursuant to *Brady versus Maryland* and its progeny, the United
20   States is ordered to produce all exculpatory evidence to the
21   defendant pursuant -- as I said, pursuant to *Brady versus*
22   *Maryland* and Federal Rule of Criminal Procedure 5(f).
23            Not doing so in a timely manner may result in
24   sanctions, including exclusion of evidence, adverse jury
25   instructions, dismissal of charges and contempt.
```

1            Do you understand this?

2            MR. DREHER:  Yes, Your Honor.

3            THE COURT:  Okay.  I understand from my courtroom
4   deputy, Mr. Shipley, that you wanted to conduct an arraignment
5   today, but this is not a felony case, is it?

6            MR. SHIPLEY:  No, Your Honor, but I think we do need
7   to arraign him on -- doesn't have to be done today.  We just
8   need to enter a plea as to the information.

9            THE COURT:  Okay.  I would suggest you do that -- do
10  we have a CR number?  We could do that at the next hearing,
11  sir.

12           DEPUTY CLERK:  This does have a --

13           THE COURT:  Ms. Butler, is there a --

14           DEPUTY CLERK:  Yes, this does have a criminal case
15  number, and it's assigned to Judge Cooper.

16           THE COURT:  Okay.  Do that at the next hearing.

17           All right.  Let me ask Mr. Dreher to state on the
18  record what the government's request is with respect to
19  detention release for Mr. Baker.

20           MR. DREHER:  The government is not seeking detention,
21  Your Honor.

22           THE COURT:  Okay.  What are the conditions then that
23  the government is seeking in addition -- if there are
24  conditions in addition to the standard conditions of release, I
25  want you to both state the standard conditions, as well as any

1  additional requested conditions.

2       MR. DREHER:  Well, the government would seek the
3  standard conditions that have been imposed in nearly all
4  January 6 cases, with one caveat, Your Honor.  Generally, there
5  is a "stay out of DC," except for court, PSA business or visits
6  with the attorney.  I would ask that the Court modify that
7  language to impose a notification requirement, as opposed to a
8  "stay out of the district" requirement for Mr. Baker to inform
9  specifically pretrial services in DC prior to any visit to the
10 district.

11      Outside of that, I would continue to ask for
12 supervision to be in the Middle District of North Carolina,
13 with the standard conditions that he notify the Middle District
14 of North Carolina prior to any travel outside of the district
15 and seek Court approval for any travel outside of the United
16 States; report to PSA as directed, specifically, the Middle
17 District of North Carolina; avoid all contact, directly or
18 indirectly, with any person who is or may become a witness in
19 the investigation or prosecution, specifically, Special Agent
20 Craig Noyes, at this point; not obtain -- or excuse me, comply
21 with courtesy supervision of the Middle District of North
22 Carolina; as well as not to possess any firearms, destructive
23 devices or any other weapon; and then specifically, to report
24 as soon as possible to the pretrial services agency following
25 any contact with law enforcement to include arrests,

1  questionings or even traffic stops.
2          THE COURT:  Ms. Dahlkoetter, are there any additional
3  requested conditions by pretrial?
4          OFFICER DAHLKOETTER:  Yes, Your Honor.  So we're also
5  requesting not obtain passport or other international travel
6  document and surrender all passports to pretrial service
7  agency.
8          THE COURT:  Okay.  All right.  Mr. Shipley, are there
9  any objections to any of the standard conditions of release or
10 additional requested conditions?
11         MR. SHIPLEY:  Yes, there are a couple of objections we
12 would like for the record.  Mr. Baker currently holds a 2025
13 press credential issued by United States Congress.  He is, for
14 more than a year, been actively working with members of the
15 House of Representatives and various committee staffers in
16 connection with the various ongoing investigations of the
17 events surrounding January 6.
18         He regularly is at the Capitol reviewing video,
19 working with committee members and members themselves, and we
20 object to any kind of court-imposed restriction, whether it be
21 simply notification or otherwise, of his intentions in that
22 regard.
23         I think this, unfortunately, this particular instance
24 puts the case -- or puts the Court -- juxtaposes the authority
25 of the Court against the authority of the Congress --

1   (indiscernible) -- works to a restriction to the Congress's
2   work by saying Mr. Baker must follow any instructions that
3   might in some way influence the work that he's starting --
4   doing with the Congress.
5           So we would object to any condition that in any way
6   hinders or imposes upon him with respect to coming into or out
7   of the district at the express invitation of the Congress to do
8   so.
9           As to the firearms restriction --
10          THE COURT:  Hold on.  Hold on.  As to the
11  notification, the requirement is simply a notification
12  requirement, is it not?
13          MR. SHIPLEY:  Correct, but I think that's even too
14  much.
15          THE COURT:  Okay.  Well, I think it overstates it to
16  say that when Mr. Baker is not appearing pursuant to some
17  compelled presence in Congress, he's got a press credentials or
18  whatever business he might have, he is still entitled to do
19  that by simply notifying pretrial he is coming back to,
20  essentially, what is the location of the alleged offense.
21          So I'm going to overrule that objection.  I do not
22  find it overly burdensome.
23          MR. SHIPLEY:  We have a fact-specific issue that
24  I've discussed with counsel regarding the firearm restriction.
25  Mr. Baker has to travel extensively between Dallas, the

1  District of Columbia, and his residence in North Carolina.
2  He's in Dallas because that's where his employer is, and he
3  does a lot of work physically from space.  Dallas, or the State
4  of Texas is a constitutional open-carry state.
5       Mr. Baker's notoriety has attracted at least one
6  stalker already who tried to confront him at his place of
7  employment and was intercepted by security there, so we have
8  some safety considerations.
9       He has a firearms permit in North Carolina.  He
10 regularly carries a firearm with him.  He regularly carries a
11 firearm in Texas with him.  Obviously, he does not do that, you
12 know, in the District or up on Capitol Hill, but we, for his
13 own personal safety reasons, and we will work out the details,
14 if necessary with the Northern District of Texas, which I think
15 is where we have decided his supervision will be, but we would
16 prefer in this all misdemeanor case to not have a restriction
17 on his ability to possess or carry a firearm.
18       THE COURT:  Mr. Dreher?
19       MR. DREHER:  Your Honor, Mr. Shipley is correct.  We
20 did have an opportunity briefly to speak prior to coming out on
21 the record in today's hearing about this.  It was the first
22 time I had been informed of any potential safety issue that
23 could be raised.  I'm not sure specifically that the safety
24 concern that was raised would necessitate the possession of all
25 manners of firearm or whether or not there should be some sort

1  of exclusion related to perhaps whatever personal carry that
2  could be made based upon those safety concerns, but I would
3  certainly ask that the Court impose the no firearm restriction
4  and require at least some sort of documentation to support that
5  there is in fact a safety concern related to this stalker that
6  may have appeared at Mr. Baker's employer prior to the Court
7  modifying the standard conditions that have been provided in
8  nearly every January 6 case.
9            THE COURT:  Okay.
10           MR. SHIPLEY:  There's one other issue.  This may be
11 something --
12           THE COURT:  Excuse me.  Excuse me.  Hold on just a
13 moment.  I'm talking.  Just a second.
14           Have you achieved or exchanged any sort of details
15 about this alleged incident, Mr. Shipley?
16           MR. SHIPLEY:  Not until we spoke this morning.  It
17 happened a couple of days ago, so it's an online -- it's a
18 person who's online.  We know who it is.  He regularly records
19 video online. He said what he was going to do.  We know his
20 name, we know who he is.
21           He appeared and was confronted by security at Mr.
22 Baker's employment.  We can document all that, that's not a
23 problem.
24           THE COURT:  Yeah, let's do that.  Did you have some --
25 one thing I will do -- I'm not going to decide this, you know,

1  just based on an oral motion.  Please file a motion to modify
2  those conditions of release.  For now, I am going to keep the
3  condition imposed.  But, Mr. Shipley, if you file a motion with
4  that documentation, providing specifics, and then Mr. Dreher,
5  you can respond, and then either I or Judge Cooper will take up
6  that motion.
7            MR. SHIPLEY:  Okay.  There is one other issue in that
8  regard tangentially that I just want to -- and then we can put
9  this on -- we can file this as well and see if we can work out
10 the details.
11           In North Carolina, Mr. Baker shares a home with a
12 disabled veteran and provides a significant amount of care for
13 this individual who has some transportation and ambulatory
14 limitations.  That person has an extensive firearm collection
15 going back to his service date, so that is all under lock and
16 key in a gun safe.
17           Mr. Baker does not spend a lot of time there because
18 his employment takes him elsewhere quite often, but we would
19 need to account for that in some fashion.  If we can't account
20 for that in some fashion, then it's going to force Mr. Baker to
21 relocate or it's going to force his roommate to relocate, both
22 of which would be a significant hardship.
23           THE COURT:  Okay.  All right.  Well, thank you for
24 that detail.  I think, Mr. Shipley, if we can get all the input
25 in a motion and allow the government to respond.

1        To the extent you all can discuss this after you've
2   filed your motion and see what you can work out, or even before
3   you file your motion, to the extent you can narrow and come up
4   with any sort of reasonable resolution to this, and then I
5   would encourage you to do that.
6        But otherwise, just put this all in a motion and the
7   Court will consider it once it's gotten all the briefing.
8        MR. DREHER:  I'll do that, Your Honor.  Thank you.
9        THE COURT:  Thank you.  Is there anything further at
10  this time as to objections to the conditions of release?
11       OFFICER DAHLKOETTER:  Your Honor, Britney Dahlkoetter
12  from pretrial.  Apologies for interrupting.
13       I just wanted to verify, I did have a chance to speak
14  to my supervisor before you came on the bench, because I
15  know me and Mr. Shipley talked about it, so his main
16  supervision will be in North Carolina because that's where his
17  mailing address is.  I know he spends a lot of time in Texas,
18  but his courtesy supervision will be at the -- (indiscernible)
19  -- North Carolina.
20       THE COURT:  Okay.  Was there something further you
21  had, Mr. Shipley?
22       MR. SHIPLEY:  No, Your Honor.  We'll try to work out
23  these details and not need to involve the Court with that kind
24  of the -- his comings and goings of travels.
25       THE COURT:  Thank you.  I appreciate that.

1            Okay.  All right.  Mr. Baker, I'm going to read to you
2   now the consequences of failing to follow all your conditions
3   of release.  Please listen to these carefully, to your
4   conditions of release.  It's important that you comply with
5   them.  If you fail to comply with any of your conditions of
6   release, a warrant may be issued for your arrest, your
7   conditions of release may be revoked and you may be held
8   pending trial in this case.  You may also be charged with
9   contempt of court for having violated court-ordered conditions
10  of release.
11           Your most important condition of release is that you
12  not commit a state, federal or local crime while on release.
13  If you were to do so, again, a warrant may be issued for your
14  arrest, your conditions of release may be revoked and you may
15  be held pending trial in this case.  You may also face a longer
16  sentence for having committed a crime while on release in this
17  case.
18           In a moment, I will set the next court date in this
19  case, and it's important that you appear for that court date,
20  and all future court dates in your case.  Failure to do so may
21  result in a warrant being issued for your arrest, your
22  conditions of release being revoked and you being held pending
23  trial in this case.  You may also face an additional criminal
24  charge for failure to appear.
25           Finally, I would like to remind you, sir, that it is a

1  crime to try to influence a juror or to threaten or attempt to
2  bribe a witness or other person who may have information about
3  your case or to retaliate against anyone for providing
4  information about your case to the prosecution or to otherwise
5  obstruct the administration of justice.
6          Do you understand all of these consequences, sir?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  And having heard the conditions of
9  release, as well as the warnings for failing to follow them,
10 are you prepared to follow your conditions or release?
11         THE DEFENDANT:  Yes, Your Honor.
12         THE COURT:  Okay.  Ms. Butler, could you please swear
13 Mr. Baker into compliance.
14         DEPUTY CLERK:  Yes, Your Honor.
15         Mr. Baker, please raise your right hand.
16         Do you solemnly swear to abide by the conditions of
17 release as set forth by this Court, so help you God?
18         THE DEFENDANT:  I do.
19         DEPUTY CLERK:  Thank you.
20         THE COURT:  Thank you, sir.
21         Have you all discussed what the next -- when the next
22 hearing date will be, or do we have a hearing date, Ms. Butler,
23 with Judge Cooper?
24          DEPUTY CLERK:  Yes, Your Honor, I do have a hearing
25 date.  It will be April the 3rd at 3:00 p.m. via Zoom, before

1  Judge Cooper.
2         THE COURT:  Okay.  And Mr. Dreher, does the government
3  have a position under the Speedy Trial Act?
4         MR. DREHER:  Your Honor, it's my understanding that
5  with the information being filed and the defendant not yet
6  pleading not guilty to that, that the time is already tolled,
7  but I certainly would request, based on the voluminous
8  discovery, which details are still being worked out regarding
9  the verbiage of a protective order, that this Court make a
10 finding that the interest of justice would also provide for a
11 tolling of speedy trial.
12        THE COURT:  Okay.  Mr. Shipley, is there any objection
13 to the tolling out of an abundance of caution?
14        MR. SHIPLEY:  No objection, Your Honor.
15        THE COURT:  Okay.  Thank you.  All right.  Out of an
16 abundance of caution and the interest of justice, I will toll
17 the time between now and the hearing -- next hearing date.
18        A couple of housekeeping items, Mr. Shipley, to the
19 extent that the arresting jurisdiction did set conditions that
20 are different than the conditions set by this Court, typically,
21 what we do is we like to ask defense counsel to either ensure
22 that the conditions from the arresting jurisdiction are
23 dismissed or that the defendant agrees to comply with both sets
24 of conditions.  I'll leave it to you.
25        MR. SHIPLEY:  I think we are prepared to comply with

1  the conditions that were imposed in Texas, as well as the
2  conditions today, until or if adjusted.
3              THE COURT:  Okay.  And have you -- do we have your
4  contact information so that we can get the conditions of
5  release sent to you so that you can give them to Mr. Baker?
6  Have you entered your appearance?
7              MR. SHIPLEY:  Yes, Your Honor.  My 52nd January 6
8  case.
9              THE COURT:  Okay.  All right.
10             MR. SHIPLEY:  Well known around the courthouse.
11             THE COURT:  I know.  We know where to find you then.
12  It's fine.
13             Okay.  All right.  Well, then you all have a next date
14  before Judge Cooper.
15             Is there anything further at this time?
16             MR. SHIPLEY:  Nothing for Mr. Baker, Your Honor.
17             THE COURT:  Okay.
18             MR. DREHER:  Just to clarify, with the motion to
19  modify the conditions then, will that be filed before Judge
20  Cooper?
21             THE COURT:  Well, depending on when it's filed.  I
22  will confer with his chambers, and either -- it will either be
23  taken up by him or by one of the district judges.  I'll need to
24  look into that.
25             MR. DREHER:  Yeah, Your Honor.  Nothing further from

1 the government.

2       THE COURT: Okay. All right. Thank you.

3       Thank you, Mr. Baker.

4       Unless there's anything further, I will excuse you

5 all.

6       (Proceedings concluded at 1:09 p.m.)

7

8                    CERTIFICATE

9    I, Sonja L. Reeves, Federal Official Court Reporter in and
for the United States District Court of the District of
10 Columbia, do hereby certify that the foregoing transcript is a
true and accurate transcript from the digital record in the
11 above-entitled matter and that the transcript page format is in
conformance with the regulations of the Judicial Conference of
12 the United States.

13    Dated this 23rd day of May, 2024.

14

15                    /s/ Sonja L. Reeves
                   SONJA L. REEVES, RDR-CRR
16                    FEDERAL OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25