UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 24-cr-00121-CRC |
| ) | |
| STEPHEN BAKER, ) | |
| ) | |
| ) | |
| Defendant ) | |
| ) | |

**<u>DEFENDANT STEPHEN BAKER'S MOTION FOR RECONSIDERATION OF
MOTION TO MODIFY TERMS AND CONDITIONS OF RELEASE</u>**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

Defendant hereby moves for reconsideration for the Court's Order dated May 14, 2024, granting in part and denying in part his Motion to Modify the Terms and Conditions of Pretrial Release.

Without further elaboration, but only to make clear that any appellate rights are not waived, Mr. Baker restates his objection to the imposition of any conditions beyond those specified in Sec. 3142(b) without a detention hearing or finding by a judicial officer that his release would pose a risk of flight or danger to the community.  As noted in the motion, the Government conceded that it does not assert that he is either a flight risk or danger to the community, and it did not request a detention hearing prior to the conditions being imposed.

"No Firearms" Condition.

As to the denial of Mr. Baker's request to restore of his right to possess and carry a firearm for self-defense -- based on the objection by Pretrial Services that a modification of the "no firearms" condition would pose a risk to Pretrial Services Officers who might conduct a home visit -- Mr. Baker asks for reconsideration of this ruling.

Mr. Baker has confirmed with his Pretrial Services Officer in North Carolina, Bryson Karbley, that PTO Karbley does not object to a modification that allows Mr. Baker to possess and carry a firearm for personal protection while traveling.[1]

---

[1] PTO Karbley also has confirmed that he did not advise Pretrial Services in the District of Columbia that Mr. Baker was not in compliance with the conditions imposed, nor that Mr. Baker was objecting to complying with the conditions imposed.  He never requested that this Court be notified in that regard, nor that the Court take any action such as the Order entered by the Court on March 25, 2024.   PTO Karbley confirmed that his only conversation on that subject was when Mr. Baker discussed with PTO Karbley his intention to seek to modify

In addition, the Court's reference to Mr. Baker having made "threatening statements threatening statements directed at specific public officials during the riot on January 6, 2021" is factually incorrect.

The Court's Order does not specify what "threatening statements" it is referring to by this reference. In the Government's Opposition, it noted the following comment alleged to have been made by Mr. Baker:

> …Baker captured video from the west side of the Capitol Reflecting Pool near a location where gallows had been constructed and recorded himself saying, "Look out your windows bitches, look what's coming."

ECF No. 19, at p. 5.

That comment cannot be fairly characterized as a "threat" by Mr. Baker directed at individuals inside the Capitol. Oddly, the Government's Opposition did not disclose to this Court the time at which that comment was made. But the Government has that information -- the Criminal Complaint Affidavit states at page 4 that he recorded himself making that comment at 1:10 p.m. – more than an hour before the crowd first breached the Capitol. The Affidavit and the Opposition also confirm that the comment was made when Mr. Baker was still on the west side of the Capitol Reflecting Pool – presumably near Third Avenue and far outside the restricted perimeter of the Capitol on January 6, 2021.

As the Court is aware, the east side of the Courthouse faces Third Avenue, and the entirety of the Reflecting Pool and Capitol Park sat between Mr. Baker's location and the police line on the west side of the building – along with tens of thousands of people that were in between.

---

one or more conditions through his counsel, and at no time did Mr. Baker state he would not comply, and Mr. Baker has complied with his conditions of release.

The comment was not a "threat" in any manner. It was part of Mr. Baker's "running" commentary and dialogue with the crowd as he captured events on video for later use. His words are nothing more than his description of his observation about events as he watched them unfold.

There are no charges against Mr. Baker based on this particular comment – its inclusion in the Criminal Complaint Affidavit and the Response here is simple "character assassination" as the Government is wont to do in all of the January 6 cases. There is no other explanation for employing a 13-page affidavit to obtain an all-misdemeanor criminal complaint 36 months after the event in question when the necessary facts to accomplish that purpose could have been set forth in 2-3 paragraphs. Or the Government could have simply filed the Information at the start.

The extra-judicial motive(s) in impugning the character of January 6 defendants through this unnecessary use of criminal complaints and affidavits are transparent to all who are familiar with how the Department of Justice has functioned historically.

So far as the Defense can discern from the Opposition, this is the only comment made "during the riot on January 6…" as referenced by the Court in its Order.

The Court's Order also references Mr. Baker having allegedly made "threatening statements directed at specific public officials…". In that respect, the Government's Opposition included the following comment attributed to Mr. Baker which specifically identifies one public official by name:

> The only thing I regret is that I didn't like steal their computers because God knows what I could've found on their computers if I'd done that. But

> by the time I got into Pelosi's office, unfortunately there was some damage done.
>
> As I was exiting Pelosi's office the sign was being busted up into little pieces and people were collecting it as souvenirs.
>
> Pelosi's office was... ehhh.. They got Pelosi's office and you know, it couldn't happen to a better deserving bitch.

ECF No. 19, p. 6.

But this comment was not made during the riot on January 6 – it was made during the recording of a video by Mr. Baker and another reporter who is a close friend as they sat together hours later -- late in the evening on January 6 over adult beverages while watching news footage of the events earlier in the day.

The comment about stealing the computer was made in reaction to news reports that former Speaker Pelosi's computer had been stolen from her office. Mr. Baker's comment – as is obvious when the video is viewed – is a moment of levity between he and his friend/colleague after a long day full of many unique experiences.  It is a lament by a journalist about what information he might have discovered if he had acquired the computer.  Daniel Ellsberg was made a hero over a similar effort during the Vietnam War.

It is not accurate to call this a "threatening statement ... during the riot on January 6."  It is clear First Amendment protected political speech long after the riot had ended and the Capitol was secure.  The video was made by Mr. Baker and his friend for the purpose of posting it on his news distribution feed as an independent journalist about he had seen and heard during the day as compared to what he was seeing reported in the mainstream media about the same.

The following chart reflects seventeen other misdemeanor cases involving January 6 defendants who were not deprived of their constitutional right to possess and carry a firearm for personal protection:

| U.S. v. Morgan-Lloyd | 21-cr-00164 RCL | All Misdemeanors |
|---|---|---|
| U.S. v. Lentz | 21-cr-00206 RMM | All Misdemeanors |
| U.S. v. Revlett | 21-cr-00281 JEB | All Misdemeanors |
| U.S. v. Blakely | 21-cr-00356 EGS | All Misdemeanors |
| U.S. v. Castro | 21-cr-00299 RBW | All Misdemeanors |
| U.S. v. Gold | 21-cr-00085 CRC | All Misdemeanors |
| U.S. v. Strong | 21-cr-00144 TJK | All Misdemeanors |
| U.S. v. Heinl | 21-cr-00319 RMM | All Misdemeanors |
| U.S. v. Sahady | 21-cr-00134 CJN | All Misdemeanors |
| U.S. v. Fisher | 21-cr-00142 CJN | All Misdemeanors |
| U.S. v. Gerding | 21-cr-00131 PLF | All Misdemeanors |
| U.S. v. Strong | 21-cr-00114 TJK | All Misdemeanors |
| U.S. v. Andries | 21-cr-00093 RC | All Misdemeanors |
| U.S. v. Ciarpelli | 21-cr-00038 RMM | All Misdemeanors |
| U.S. v. Aungst | 21-cr-00144 RBW | All Misdemeanors |
| U.S. v. Strand | 21-cr-00085 CRC | All Misdemeanors |
| U.S. v. Pope | 21-cr-00128 RC | All Misdemeanors |

"Notification of Travel to the District of Columbia" Condition.

The Court's Order finds that the condition requiring "notification" of Pretrial Services of Mr. Baker's intent to travel into the District of Columbia is

meant to address a risk of "danger to the community," specifically the potential danger to lawmakers ("… the gravity of his purported misconduct inside the Capitol on January 6, which was allegedly targeted at high-ranking federal lawmakers").

To the extent the reference to Mr. Baker having "targeted high-ranking federal lawmakers" concerns the statement regarding Speaker Pelosi, that comment was made hours after the riot had ended as noted above.

But, in addition, the Order fails to account for the fact that Mr. Baker has made dozens of trips to the District of Columbia metropolitan area and come into the District hundreds of time since January 6, 2021 – including into the Capitol itself while lawmakers were present -- all without incident and without having to "notify" anyone.

It also fails to account for the fact that Mr. Baker possesses a Congressionally issued "Press Badge" for 2024, and that he had similar press credentials issued by Congress for 2023.   These credential are approved by the Senate Sargent-at-Arms, who also serves on the U.S. Capitol Police Board.  There has never been any issue raised regarding the safety of Congress or anyone else by Mr. Baker's presence in the District, the Federal Courthouse, or the Capitol building itself.  Mr. Baker has spoken with dozens of members of Congress about the fact that he has been under DOJ investigation for more than two years, and House Judiciary Committee Chairman Jim Jordan has demanded information from DOJ about its investigation of Mr. Baker.

These undisputed facts call into question whether the "notification" condition serves any function, and whether there is any specific articulable

threat of danger – as required by *Munchel* – posed to anyone in the District of Columbia by Mr. Baker's unannounced arrival such that "notification" of Pretrial Services is a condition *necessary* to mitigate that threat.

Dated: June 1, 2024               Respectfully submitted,

_____
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com