UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 24-cr-121-CRC |
| v. | : | |
| | : | |
| STEPHEN BAKER, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S MOTION *IN LIMINE* REGARDING
VIDEO MONTAGE EVIDENCE

The United States of America moves for an order *in limine* to admit a video montage, without subscribing witness, relating to the Congressional Record on January 6, 2021, pursuant to Fed. R. Evid. 401, 402, 901, 902, and 1006.

### Introduction

In count two, the defendant, Stephen Baker, is charged with violating 18 U.S.C. § 1752(a)(2), by knowingly, and with intent to impede or disrupt the orderly conduct of Government business and official functions, engaging in disorderly or disruptive conduct in any restricted building or grounds. In count three, the defendant is charged with violating 40 U.S.C. § 5104(e)(2)(D), by knowingly and willfully engaging in disorderly or disruptive conduct with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress. To satisfy this "orderly conduct of government business or official function" element of a violation of 18 U.S.C. § 1752(a)(2), the government intends to show that there was *in fact* Government business and official functions occurring on January 6, 2021. To satisfy the "orderly conduct of a session of Congress and either House of Congress" element of a violation of 40 U.S.C. § 5104(e)(2)(D), the government intends to show that there was *in fact* a session of Congress occurring on January 6, 2021.

The Government seeks admission of an approximately nine-and-a-half-minute video montage that compiles portions of the official Congressional Record with portions of official Congressional Media and depicts the Congressional activities in a way that illustrates Government business was *in fact* occurring on January 6, 2021, and was delayed and impeded as a result of the mob that entered the building.

## Argument

Trial courts have inherent authority to manage the course of trials. *See generally* Fed. R. Evid. 103(d), and Fed. R. Crim. Pro. 12. "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the court of trials." *Luce v United States*, 469 U.S. 38, 41 n. 4 (1984). More directly, rulings about the admissibility of evidence pre-trial "may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v Jackson*, 627 F.2d 1198, 1209 (D.C. Cir 1980).



The proposed montage consists of video depictions of both houses of Congress, appearing next to portions of the Congressional Record, and organized in a manner that provides a summary-timeline of the Governmental business that was occurring on January 6, 2021. *See above*.

First, the record itself is self-authenticating. Pursuant to 44 U.S.C. § 903, "[t]he public proceedings of each House of Congress as reported by the Official Reporters, shall be printed in the Congressional Record, which shall be issued in daily form during each session and *shall be revised, printed, and bound promptly*, as directed by the Joint Committee on Printing, in permanent form, for distribution during and after the close of each session of Congress." (emphasis added) Under 44 U.S.C. § 906, copies of the bound version of the Congressional Record must then be supplied, "to each United States circuit and district judge . . .." A public electronic copy of each daily edition is available at https://www.congress.gov. The Congressional Record is an official publication. Under Fed. R. Evid. 902, "[t]he following items of evidence are self-authenticating;

they require no extrinsic evidence of authenticity in order to be admitted: . . . (5) **Official Publications.** A book, pamphlet, or other publication purporting to be issued by a public authority." (emphasis in original) As an official publication, the Congressional Record is self-authenticating.

Moreover, in conjunction with the official record, the videos are authentic. Each chamber of Congress establishes its own rules relating to broadcasting what occurs within the chamber. Rule V, of the Rules of the House of Representatives for the One Hundred Seventeenth Congress, provided: "(a) The Speaker shall administer, direct, and control a system for complete and unedited audio and visual broadcasting and recording of the floor proceedings of the House. The Speaker shall provide for the distribution of such broadcasts and recordings to news media, for the storage of audio and video recordings of the proceedings, and for the closed-captioning of the proceedings for hearing-impaired persons."

Under Senate Rule XXXIII, "The Committee [on Rules and Administration] shall make such regulations respecting the reporters' galleries of the Senate, . . . and of news or press associations for daily news dissemination through radio, television, wires, and cables, and similar media of transmission." Both chambers each limit the access of recordings of each respective gallery to these officially established broadcasts. This 'one-and-only-stop shop' of video depictions of the chambers, make identifying videos from those chambers relatively straight-forward. One example of authentication is producing "evidence sufficient to support a finding that the item is what the proponent claims it to be," by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(a) and (b)(4).

Here, the video clips from each gallery are distinct. Both the House and the Senate are unique filming locations, and the individuals recorded within the clips are immediately identifiable as members of the House or Senate. Further, the content and substance along with the individuals within the video clips match what has been recorded in the Congressional Record. These video depictions, taken together with all the circumstances, provide sufficient evidence to support a finding that the item is what the proponent claims it is. It is thus authentic.

All in all, this exhibit helps appropriately consolidate an otherwise voluminous record. Rather than introducing 91 pages of the congressional record, along with more than 15 hours of relevant footage from both chambers of what happened on January 6, 2021 between approximately 12:00 p.m., this video enables the government to introduce what would otherwise be a large, burdensome series of exhibits. In other words, under Fed. R. Evid. 1006, the video represents an appropriate "summary . . . to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in Court."

Here, count two requires the government to prove that government business or an official function was ongoing and then disrupted; count three requires the government to prove that a session of Congress was disrupted. Since relevant evidence is evidence that tends to make a fact more or less probable, evidence of the actual proceedings occurring in both houses of Congress, coupled with overall evidence of the riot that consumed the building (and thus disrupted the business of Congress and the U.S. Capitol Police) makes the likelihood of the defendant's participation in the crimes he is charged with more probable.

## Conclusion

For these reasons, the United States requests that this Court enter an order, as described above, allowing for the admission of the nine-and-a-half-minute montage of the Congressional Proceedings at the defendant's trial.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov