UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 24-cr-00121-CRC |
| ) | |
| STEVEN BAKER ) | |
| ) | |
| ) | |
| Defendant ) | |
| ) | |

# MOTION TO DISMISS COUNTS ONE, TWO, THREE, AND FOUR OF THE INFORMATION

William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

Pursuant to the Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) and the Fifth Amendment to the United States Constitution, Defendant Steven Baker moves to dismiss Counts One through Four of the Information based on "selective prosecution" of the defendant following his participation in the January 6 political protest in front of the Capitol. *Wayte v. United States*, 470 U.S. 598, 608 (1985); *United States v. Armstrong*, 517 U.S. 456 (1996).[1]  In the alternative to outright dismissal at this juncture, the defendant seeks leave of court to obtain discovery on the issue of selective prosecution pursuant to *Armstrong.* 470 U.S. at 469-70, and to file a motion to compel the production of that discovery if necessary.

Selective prosecution claims are judged "according to ordinary equal protection standards." *Wayte*, 470 at 608 (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  The Supreme Court explained the Fifth Amendment "does contain an equal protection component." *Wayte,* 470 U.S. 598, n. 9; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). The Court's treatment of Fifth Amendment equal protection claims has been "precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n. 2 (1975).

---

[1] Portions of this Motion have been taken from or developed out of similar motions filed on behalf of other defendants charged in connection with the events of January 6, 2021. The sampling of other such motions is not credited in this motion due to the extensive notations that such credit would require.  The sampling is largely limited to legal arguments and case citations that are common across dozens/hundreds of prosecutions that have arisen out of the events of January 6, 2021.

In our criminal justice system, the executive branch has broad discretion to decide whom to prosecute. However, prosecutorial discretion is not unfettered, and selectivity in the enforcement of criminal laws is subject to constitutional constraints.  To establish a claim of selective prosecution, a defendant must show both discriminatory effect and discriminatory purpose.

A selective prosecution claim begins through a defendant's assertion that the government has brought a criminal charge against a particular defendant for reasons forbidden by the Constitution and a corresponding demand for discovery on the matter. *Armstrong*, 517 U.S. at 468.  The defendant's initial assertion of selective prosecution does not require conclusive proof; rather, the assertion simply entitles the defendant to discovery in aid of his claim -- if he reaches the "rigorous" standard that is outlined in *Armstrong* --  "a credible showing of different treatment of similarly situated persons." *Id*. at 468-70. To meet this burden the defendant must demonstrate that the government's prosecutorial decisions had a discriminatory effect *and* were motivated by a discriminatory purpose. *Id*. But to obtain an opportunity to pursue discovery the defendant does not need to prove this by a preponderance of the evidence, nor by clear and convicting evidence. Instead, for purposes of supporting his discovery request, the defendant need only show "some evidence tending to show the existence of the essential elements" of a selective prosecution claim.  *Armstrong,* 517 U.S. 469-70. Impermissible motives

"includ[e] the exercise of protected statutory and constitutional rights." *Wayte*, 470 U.S. at 608 (1985). "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Armstrong*, 517 U.S. at 464.

Generally, the government benefits from a "presumption of regularity" in deciding when and whether to institute criminal proceedings, on what charge, and whether to dismiss a proceeding once brought. *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016). However, "the Government cannot base its decision to prosecute on some unjustifiable standard, such as a defendant's 'political beliefs.'" *United States v. Judd*, 1:21-cr-00040 (TNM)(D.D.C. Dec. 28, 2021) (citing *Branch Ministries v. Rossotti*, 40 F. Supp. 2d 15, 21 (D.D.C.), aff'd 211 F.3d 137 (D.C. Cir. 2000)). The exercise of constitutional rights, such as First Amendment rights, may not affect the government's decision to selectively prosecute a particular defendant. *Wayte,* 470 U.S. at 608. When similarly situated individuals are not prosecuted, but "committed roughly the same crime under roughly the same circumstances," the defendant may compare his case to theirs to show the disparity. *See United States v. Khanu,* 664 F. Supp. 2d 28, 32 (D.D.C. 2009).

To lay the foundation for discovery on the issue of selective prosecution, a defendant must (1) make "a credible showing of different treatment of similarly

situated persons," and, (2) show that the government's prosecutorial process had "a discriminatory purpose." *Armstrong*, 517 U.S. at 465. The defense may rely on indirect evidence to show the government's discriminatory intent. *United States v. Judd*, 1:21-cr-00040 (TNM) (D.D.C. Dec. 28, 2021); see also *United States v. Khanu*, 664 F. Supp. 2d 28, 33 (D.D.C. 2009).

Once the defendant meets his burden of proof, the standard for the government's production of discovery on selective prosecution is "rigorous." *Armstrong*, 517 U.S. at 457.

As set forth in more detail below, there is no doubt that the government has chosen to not prosecute similarly situated individuals. Attached as Exhibit "A" to this Motion is a chart listing the initials of other individuals who were present at the Capitol on January 6, 2021, in the capacity as paid journalists or freelance journalists, along with the organization they were employed by or affiliated with, or entities where their work covering the events of January 6 appeared as a news story. None of the individuals listed in Exhibit "A" have been charged with any offense in connection with their presence on the Capitol grounds or inside the Capitol building.

Whether Mr. Baker's prosecution has been based on protected political speech and beliefs will be something that will be best determined after he is able to

obtain discovery from the Government with respect to the failure of the Government to seek to prosecute any of the individuals listed in Exhibit "A".

## Argument

On January 6, 2021, Defendant Baker attended the "Stop the Steal" rally at the Ellipse and then walked to the U.S. Capitol. At both locations Mr. Baker was recording events with a video camera while at the same time contributing an audio narration based on what he was observing. At the U.S. Capitol Mr. Baker followed the progress of the crowd as it advanced from the Lower West Plaza to the Upper West Plaza and into the Capitol. Mr. Baker was video recording nearly the entire time, providing a comprehensive road map – particularly when joined with CCTV video – of every step he took over the course of the afternoon.

After January 6, 2021, Mr. Baker published via social media much of this material on his own as a freelance journalist. He also licensed his video content to other media outlets, including the New York Times and others for use in their reporting, and to HBO for use in a documentary.

Many months later the Department of Justice issued a grand jury subpoena to Mr. Baker for his video as well, given its comprehensive nature over the course of several hours while he was covering the event.

The circumstantial evidence of the Government's bias against Mr. Baker based on his journalism -- with an avowed libertarian point of view that has been

highly critical of DOJ and the U.S. Capitol Police[2] -- is corroborated by its decision to prosecute his conduct while choosing to not prosecute dozens of other journalists – corporate and free-lance – for conduct nearly identical to Mr. Baker's but with opposing political views.

The Equal Protection Clause does not permit the Government to exercise power against Mr. Baker based on its conclusion that he possesses anti-governmental views as reflected by his presence on the Capitol grounds on January 6. The Government's exercise of prosecution powers in Mr. Baker's case while not similarly exercising that power against others with opposing views is unjust. The Government's conduct is reminiscent of what was described in *Yick Wo v. Hopkins*, in which the Supreme Court stated that even when a law is otherwise neutral on its face— if it is "applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *Yick Wo* v. *Hopkins,* 118 U. S. 356, 373-74 (1886).

---

[2] https://www.theblaze.com/columns/analysis/analysis-did-pelosi-security-chief-perjure-himself-in-oath-keepers-trial
https://www.theblaze.com/columns/analysis/harry-dunns-account-of-january-6-does-not-add-up-at-all
https://www.theblaze.com/columns/analysis/revealed-a-plainclothes-capitol-cop-found-the-dnc-pipe-bomb
https://www.theblaze.com/columns/analysis/favoritism-cover-ups-reveal-culture-of-corruption-in-us-capitol-police-leadership

To prevail, Mr. Baker must show the government's policy of how it selects individuals for prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong,* 470 U.S. at 465.  Mr. Baker has shown that the discriminatory effect is that only he, as a libertarian/conservative journalist at the Capitol on January 6, 2021, was investigated for years and only charged 37 months after the fact, while nearly identical conduct under nearly identical circumstances has not been prosecuted when the offenders had other political views but were easily identifiable.

Based on information and belief, Mr. Baker alleges that the United States Capitol Police provided advance approval for some journalists who were authorized to be inside the Capitol to cover the Congressional Certification proceeding that was to take place on January 6, 2021.  A list of all such journalists authorized to be in the Capitol or on the Capitol grounds that day exists and should be subject to discovery.

In addition, the chart attached hereto as Exhibit "A" contains a list of other journalists – identified by their initials and media affiliation – who have been determined to have been at the Capitol based on video analysis or their own reporting of the events that day.  None of the journalists listed in Exhibit "A" have been charged for having entered the Capitol or the Capitol grounds without authorization – the charges that have been filed against Mr. Baker.

Through discovery Mr. Baker will be able to identify specific individuals engaged in the same conduct about whom the Government is aware but has chose to not prosecute, making them the beneficiaries of selective non-prosecution where the only distinction with Mr. Baker is a difference in their politic views.  In *Yick Wo*, 118 U. S. at 374, the Court found that the similarly situated requirement was met when an ordinance was applied against Chinese nationals but not against other laundry-shop operators. *Armstrong,* 470 U.S. at 466. Here, the federal statutes regarding unauthorized entry or presence in the Capitol or on the Capitol grounds is being applied only against journalist with a sympathetic point of view towards the protesters, while other journalist who engaged in identical conduct have not been prosecuted.   The "same acts under similar conditions" requirement is met in this case through proof of occurrence of these acts and the Government's lack of prosecution thereof. *See Armstrong*, 470 U.S. at 466. The defendant has to "produce some evidence that similarly situated defendants… could have been prosecuted but were not." *Id*. at 469.

The Capitol Police possess a list of all journalists who were authorized to be in the Capitol or on the Capitol grounds on January 6, 2021.  Any journalist not on that list, but on the grounds and/or inside the Capitol is subject to prosecution.  The dozens of individuals listed in Exhibit A have not been prosecuted during the 44 months since.

The deliberate choice not to prosecute one man but to prosecute another, distinguishable only through their political participation, is exactly the type of selective prosecution that *Wayte* and *Armstrong* sought to preclude.

Mr. Baker's case is different from the ones in which claims of selective prosecution have been denied. *See, e.g.*, *Armstrong*, 517 U.S. at 470 (defendants cannot rely on "personal conclusions based on anecdotal evidence"); *Irish People*, 684 F.2d at 946 ("no showing that the selection was improperly motivated" and "no showing that there had been any selection at all"); *United States v. Stone*, 394 F. Supp. 3d 1 (D.C. 2019) (defendant did not compare his case to similarly situated persons and did not identify *any* plausible reason for disparate charging decisions); *Judd*, 1:21-cr-00040 ("the Portland defendants are not similarly situated to [a January 6 defendant]").

Mr. Baker has identified group of specific individuals engaged in nearly identical activity in the same jurisdiction.  The circumstantial evidence of an underlying bias in the differential nature in which the two groups support an inference of improper selective prosecution that is tied to Mr. Snoots' political views.

## Conclusion

Mr. Snoots has made a "credible showing of different treatment of similarly situated persons." See *Armstrong*, 517 U.S. at 470.  Mr. Snoots has demonstrated

that political protestors with opposing political views to those he expressed on January 6, 2021, engaged in identical or worse behavior in front of the White House in May and September of 2020, but were not charged for their conduct. This is circumstantial evidence that political bias might be motivating the prosecutorial decision making process of the the government.  See *Armstrong,* 517 U.S. at 469-70; *Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982). The defense, therefore, has met its initial burden on both prongs of a selective prosecution claim.

    The defendant seeks dismissal of his charges, or, in the alternative, an opportunity to conduct rigorous discovery of the government's charging decisions and discriminatory investigative policies with a list of discoverable items that should be determined separately after or in conjunction with a hearing on this motion.

Dated: August 30, 2024                Respectfully Submitted,

                                                /s/ William L. Shipley
                                                William L. Shipley, Jr., Esq.
                                                PO BOX 745
                                                Kailua, Hawaii 96734
                                                Tel: (808) 228-1341
                                                Email: 808Shipleylaw@gmail.com

                                                *Attorney for Defendant*