UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 24-cr-121-CRC |
| v. : | |
| : | |
| STEPHEN BAKER, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to dismiss counts one, two, three, and four of the information, ECF No. 39, because he has not met the 'particularly demanding' standard of showing that he has been prosecuted for an impermissible reason. As a result, this Court should deny the defendant's motion.

I.  **Relevant Factual Background.**

In this January 6, 2021, case, the facts are largely not in dispute. Around the time of the 2020 presidential election, the defendant started an online podcast titled, "The Pragmatic Constitutionalist." The defendant introduced the podcast as an expansion of a 10-year-old hobby page that he maintained on Facebook with the same title. The expansion included a crowd-sourced funded website as well as a few other experimental podcasts. During this same period, the defendant announced his previous source of income—playing live music—likely would not be viable during the nation's response to the COVID-19 pandemic.

The defendant began to "monetize" his podcast and believed the election would help him profit with his website. He reasoned, "inaugurating a new president in January, um, much to my chagrin and much to my disappointment, but that's also . . . if I'm so bold to say I think it's one of the things that's probably going to give us a lot of legs with [The Pragmatic Constitutionalist] . .

..." The defendant continued to publish podcast episodes where he expressed his political beliefs. A few weeks after the election, the defendant began to expound upon a more active rhetoric. During a discussion related to the then-upcoming peaceful transfer of power, the defendant stated, "I have no intention of popping the corn and settling in for the show, I intend on being on the show . . .." The defendant continued, "I don't know what kind of show it is going to be, but I intend on being in the middle of it."

On January 6, 2021, the defendant joined the mob that breached the restricted perimeter of the United States Capitol Grounds and entered the United States Capitol building. The defendant moved from near the Ellipse to the Capitol through the National Mall. At approximately 1:10 p.m., he captured the scene using his phone. Near where makeshift gallows had been constructed, the defendant recorded as numerous individuals walked towards the Capitol. At that moment he stated, "Look out your windows bitches, look what's coming." ECF No. 1-1 (Statement of Facts). The defendant then continued toward the building.

At the foot of the Capitol, the defendant observed a line of riot officers holding a line. The officers used smoke, flash bangs, and other disbursal strategies to remove those individuals out of the restricted area. At one point, the defendant placed his back against a line of bicycle rack fencing and attempted to record the crowd below. The defendant was personally tapped by an officer and directed away from the line. After nearly an hour of sporadically recording the violence on the West Plaza, the defendant joined others rushing up the Northwest Stairs to the Upper West Terrace past the fallen police line.

At approximately 2:19 p.m., the defendant entered the Capitol through the broken Senate Wing Door and travelled towards the Crypt. He travelled the length of the building to the hallway immediately outside the House chamber. There, he encountered more smoke, but continued around

to another impromptu police line where the defendant noticed officers with guns drawn. He repeatedly asked, "Are you going to use that [gun] on us?!" An officer with the United States Capitol Police told the defendant to back up. Instead, he moved past the officers and travelled down a stairwell behind the officers.

The defendant was them grabbed and escorted out of the building by another officer with the United States Capitol Police. The officer took the defendant by the arm and led him out of the building. The defendant was inside for approximately 37 minutes.

Soon after, the defendant took part in an interview with a local newscast. The defendant explained, "Yeah I was quite excited to see this going on." He continued, "Do I approve of what happened today? I approve 100%" The defendant then travelled back towards the police line outside the Capitol building and reengaged with officers.



*Figure 1: Screengrab from body-worn camera footage at approximately 6:27 p.m. The defendant is circled in yellow.*

The defendant then returned to his hotel room and recorded a video later posted to YouTube. This video would later be submitted to the FBI as a tip in identifying Baker as a participant in the riot.

On August 30, 2024, the defendant filed the instant motion, seeking dismissal based on "selective prosecution" and, in the alternative, seeking "discovery on the issue of selective prosecution." ECF No. 39.

## II.     Legal Standard.

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Armstrong*, 517 U.S. at 465; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.").

"Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Armstrong*, 517 U.S. at 465; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("'[J]udicial authority is . . . at its most limited' when reviewing the Executive's . . . charging determinations" because "the Judiciary . . . generally is not 'competent to undertake' that sort of inquiry." (quoting *Cmty. for Creative Non–Violence v. Pierce*, 786 F.2d

1199, 1201 (D.C. Cir. 1986); *Wayte*, 470 U.S. at 607)). Given these considerations, there is a presumption of regularity attached to prosecutorial decisions and, with that, a presumption of good faith. *See, e.g.*, *Fokker Servs.*, 818 F.3d at 741. As a result, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Armstrong*, 517 U.S. at 464.

A prosecutor cannot, however, base a charging decision upon a person's "race, religion," or other "arbitrary classification." *Armstrong*, 517 U.S. at 464. The doctrine of "selective prosecution" is a narrow exception to the general rule that a prosecutor's charging decisions are immune from judicial review where a defendant has sufficient evidence to show that a charging decision was based, at least in part, upon an improper ground. *See generally id.* A defendant bears a "heavy burden" in showing selective prosecution, because the prosecutor's presumption of regularity remains. *Branch Ministries v. Rossotti*, 40 F. Supp. 2d 15, 21 (D.D.C. 1999); *see also United States v. Gonzales*, 119 F. App'x 576 at 577 (5th Cir. 2004). The presumption is "formidable," *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("That presumption of regularity should not lightly be discarded."), and can be overcome only by presenting "clear evidence" that the government acted improperly, *Armstrong*, 517 U.S. at 464.

Specifically, a defendant must make two showings. First, he must proffer "clear evidence" that similarly situated individuals of a different race, religion, or other arbitrary classification were not prosecuted. *Armstrong*, 517 U.S. at 464. "[T]h[is] standard is "a demanding one." *Id.* at 463. A similarly situated offender is one whose "circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions" between that person and the defendant. *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2001). The phrase "similarly

situated" is "narrowly" interpreted. *Id.* (quoting *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019)). In determining whether offenders are similarly situated, the court should "assess every" fact that is "at least arguably material" to the prosecutorial decision. *Lewis*, 517 F.3d at 27. Legitimate prosecutorial factors include "relative culpability, the strength of the case against particular defendants, willingness to cooperate, and the potential impact of a prosecution on related investigations." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009), *see e.g. Frederick Douglass Found. v. Dist. Of Columbia*, 82 F.3rd 1122, 1152 (D.C. Cir. 2023) (affirming dismissal of selective prosecution claim based on single fact that plaintiffs had been denied permits prior to chalking political messages city streets whereas comparators, who were not arrested, had not sought permission prior to engaging in their conduct).

Second, a defendant must show that the government singled this defendant out for prosecution based on the impermissible reason. *See Stone*, 394 F. Supp. 3d at 30. In other words, to show discriminatory purpose or intent, the defendant must present clear, credible evidence that the government is prosecuting him "at least in part because" of an arbitrary classification. *Wayte*, 470 U.S. at 610. Compulsion of materials at issue here requires a heightened showing.

The standard for obtaining discovery in support of a claim of selective prosecution is also a high one. The rigorous "showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464; *see also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (reversing selective-prosecution discovery order that "threatene[d] the 'performance of a core executive constitutional function'" (quoting *Armstrong*, 517 U.S. at 465)); *United States v. Bennett*, 2023 WL 6847013 (D.D.C. Oct. 17, 2023) (denying selective prosecution motion in January 6 context). To meet this standard, a defendant must "come forward with some evidence tending to show the existence of the essential elements

6

of this defense." *United States v. Navarro*, 627 F. Supp. 3d 1, 5 (D.D.C. 2022) (quoting *Armstrong*, 517 U.S. at 468). That is, the defendant must put forward "'some evidence' tending to show both discriminatory effect and discriminatory intent." *Lewis*, 517 F.3d at 25 (quoting *Armstrong*, 517 U.S. at 468) ("[D]iscovery will not be allowed unless the defendant's evidence supports each of the two furcula of his selective prosecution theory: failure on one branch dooms the discovery motion as a whole"). "If either part of the test is failed, the defense fails" and the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).  Importantly, conclusory allegations are not sufficient; instead, the defendant's evidence must be "credible"—something more than "personal conclusions based on anecdotal evidence." *Armstrong*, 517 U.S. at 470.

Moreover, a defendant cannot shift the burden to the government by claiming he cannot obtain better evidence without discovery from the government.  It "is not enough to say that evidence will materialize if the discovery is ordered." *United States v. Stone*, 394 F. Supp. 3d 1, 35 (D.D.C. 2019); *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1071 (9th Cir. 2003) ("Merely demonstrating that better evidence cannot be obtained without discovery does not suddenly render otherwise insufficient evidence sufficient.").

### III.     Argument

The defendant's argument is: (1) he is a journalist, and (2) the government has chosen not to prosecute other journalists involved in the January 6 riot. ECF No. 39, at 5. According to the defendant, this is because he is an "avowed libertarian," and his "anti-governmental views" prompted the government's prosecution. *Id.* at 6-7. As a factual matter, this is untrue. But legally, his argument also misses the mark.

Of course, his assumption that he was part of the same group as those he has identified in his proffered Exhibit A is – to start – flawed. But even if he were part of that group on January 6, 2021, the defendant still posits that *anyone* present within the restricted area should be prosecuted. Then, only until *everyone else* is prosecuted should he then be subjected to prosecution. That is not the standard to make a showing of whether he has been selectively prosecuted.

The standard requires *clear evidence* of similarly situated individuals not being prosecuted and that makes a *credible showing* the different treatment was caused by an impermissible purpose. The defendant's motion does neither.

### a. The Defendant Has Not Proffered Clear Evidence of Disparate Treatment.

Recently, in *United States v. Rundo*, 108 F.4th 792 (9th Cir. 2024), the United States Court of Appeals for the Ninth Circuit opined how to determine whether a person is similarly situated. It reasoned, "[t]he point of the 'similarly situated' analysis is to 'isolate the factor allegedly subject to impermissible discrimination.'" 108 F.4th at 799. The defendant here has failed to isolate any factor; he does not provide comparisons to the acts of any individual on January 6, nor of any individual's later expressions about January 6. Determining whether a defendant "is similarly situated to those not prosecuted will be a fact-intensive and case-specific comparative inquiry." *Frederick Douglass Foundation, Inc. v. District of Columbia*, 82 F.4th 1122, 1138 (D.C. Cir. 2023). Within the defendant's conclusory motion, facts are in short supply.

What the defendant does provide, however, is a list of individuals that he believes are journalists whom he has identified as present within the restricted area of the Capitol building and grounds on January 6, 2021. But, "[t]o establish discriminatory effect, a defendant must show that the comparator is 'the same as the defendant in all relevant respects, except that the defendant was, for instance, exercising his first amendment rights.'" *Rundo*, 108 F.4th at 801 (quoting *United*

*States v. Aguilar*, 888 F.2d 662, 706 (9th Cir. 1989)). The defendant compares neither the nature of the alleged conduct, nor the factors bearing on the decision to prosecute.

As this Court is aware, there is a wide swath of culpability amongst the individuals who have been prosecuted for their participation on January 6. The swath becomes even wider when considering those who have not yet been charged. Some defendants have been charged with felonies. Others with misdemeanors. Some have been former military or law enforcement. Others are not. Here, the defendant's own motion to dismiss is severely lacking as to what group the defendant belongs to in the first instance. Based on his motion, the defendant believes that he is a journalist, and thus, selectively compares himself (and by extension, his *conduct*) to the data set he compiled. But the data set he provides to the Court contains three data points, otherwise woefully lacking in detail. He provides the name of the alleged journalist, their respective employer, and their website. That is it. Presumably, the defendant expects the government and the Court to weed through such material, and make "fact-intensive" research, *Frederick Douglass Foundation*, 82 F.4th at 1138, known to him.

Contrary to what is required, the defendant has not provided this Court with any ability to consider prosecution factors such as, "relative culpability, the strength of the case against particular defendants, willingness to cooperate, and the potential impact of a prosecution on related investigations." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009). If they did not, what did they do? Did they document a crime scene, or participate in a crime? Did they encourage criminal conduct, or passively capture multimedia? None of those questions are asked or answered in the defendant's barebones motion. The defendant has thus failed to meet his heavy burden.

9

### b. The Defendant Has Not Proffered Clear Evidence of Impermissible Motive.

Of course, even if he *was* part of the group he alleges membership, he must still show impermissible motive. Journalists who commit crimes may be charged criminally. *See, e.g.*, Department of Justice, Justice Manual § 9-13.400 (detailing procedural protections employed internally by the Department prior to charging a member of the news media). Even if he was a journalist, as he claims, he assumes that he was charged *because* of his political ideology. As he claims, he was "only charged 37 months after the fact, while nearly identical conduct under nearly identical circumstances ha[ve] not been prosecuted." ECF No. 39, at 8. As discussed below, no such identical conduct is discussed whatsoever.

In any event, the defendant's allegations here fall short again. He provides no evidence, let alone the high bar demanded under the law, to establish that he is being prosecuted for his political beliefs or his journalism. Instead, as laid out in the charging documents, the defendant knowingly trespassed and joined a mob bent on disruption. He was not a passive observer, but an active participant, happily encouraging the mob to proceed forward. His conduct—not his beliefs—drive the legal analysis from the jump. Unsurprisingly, the complaint says nothing of his political persuasion, his publications, or any semblance of journalism. *See* ECF No. 1-1. Rather, he was a member of the riot, who claimed to have identified "the true first shot in this war" and believed that the destruction he witnessed in the office of the Speaker of the U.S. House of Representatives "couldn't [have] happened to a better deserving bitch." *Id.* To the extent the defendant can identify another journalist participant who conducted him or herself in a similar manner—who was not prosecuted based on his alleged impermissible motive—the government can then appropriately respond.

As to the defendant's suggestion that the delay in charging evinces an improper motive, his claim there fails too. As stated in *Rundo*, "we have never held that the timing of prosecutions is suggestive of improper motive. Moreover, 'timing' can merely be the sign of the government's change in enforcement priorities—which . . . *is* a permissible reason to selectively prosecute." 108 F.4th at 805 (emphasis in original).

Here, the defendant argues that years after he *knowingly* and *voluntarily* committed criminal offenses on January 6, 2021, his opinion pieces on the prosecution of *other* defendants who also committed crimes on January 6, 2021, was the basis for his own prosecution. "But if referring to the facts of a case were enough to raise an inference of discriminatory motive, then the government would never be able to prosecute an individual who has committed a crime, and whose ideology was one of the motives (or the principal motive) behind the crime." *Rundo*, 108 F.4th at 808.

As this Court knows, being a journalist does not exculpate a person from engaging in criminal conduct. *See, e.g.*, *United States v. Shroyer,* 21-cr-542-TJK (defendant who claimed to be a journalist sentenced to 60 days of incarceration after pleading guilty to a violation of 18 U.S.C. § 1752(a)(1)); *United States v. Resnick*, 23-cr-443-RC (journalist pled guilty to civil disorder); *United States v. Horn*, 21-cr-301-TJK (defendant convicted at trial after claiming to be a journalist); *United States v. Rivera*, 21-cr-60-CKK (defendant claiming to be journalist convicted at trial). This is because, "[i]t has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972). The defendant knows this too.

The defendant's principal motive on January 6, 2021, was to "be[ ] on the show" during the riot at the Capitol. To monetize his subjective views online, the defendant joined a violent mob that overran the United States Capitol. This same motivation cannot now form the basis to raise an inference of a discriminatory motive. While the defendant claims to have "identified [a] group of specific individuals engaged in *nearly identical activity*," his motion is completely devoid of any description of such "identical activity." ECF No. 39, at 10 (emphasis added). The government—and this Court—is left guessing whether the activity that is *nearly identical* relates to activity on January 6, or the subsequent activity the defendant now claims he's being discriminated for. His motion to dismiss—or more aptly reframed as a motion to compel discovery—is thus meritless.

Courts in this district, have rejected similar selective prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6. *See*, *e.g.*, *United States v. Miller*, 21-CR-119 (CJN), ECF 67 (Dec. 21, 2021); *United States v. Bennett*, 21-CR-312-JEB, 2023 WL 6847013 October 17, 2023) (also denying motion to compel discovery for a selective prosecution claim); *United States v. Costianes*, 21-CR-180-RJL (April 27, 2023) (Minute Order) (same); *United States v. McHugh*, 21-CR-453-JDB, 2023 WL 2384444, at *13 (Mar. 6, 2023); *United States v. Padilla*, 21-CR-214-JDB, 2023 WL 1964214, at *4-6 (Feb. 13, 2023); *United States v. Brock*, 21-CR-140-JDB, 2022 WL 3910549, at *11-12 (Aug. 31, 2022); *United States v. Rhodes*, 22-CR-15-APM, 2022 WL 3042200, at *4- 5 (Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 579 F. Supp. 3d at 5-9; *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. July 2, 2021) (McFadden, J.).  To the government's knowledge, no court in this district has granted such a motion in the January 6 context.

Additionally, as this Court has described, such a path to a selective prosecution claim is an "uphill march." *United States v. Eshetu*, 703 F. Supp. 3d 26, 46 (D.D.C. Nov. 8, 2023). "No matter

12

what standard applies to discovery, the party pursuing a selective enforcement claim . . . always has the burden of proving discriminatory effect and discriminatory intent." *Id.* "This is no easy feat." *Id.* As such, the defendant's lethargic effort is insufficient—the defendant must march, not be carried up the hill.

## IV.   Conclusion

The defendant has failed to present clear evidence that meets the particularly demanding standard of showing that he has been prosecuted for an impermissible reason. The government respectfully requests this Court deny the defendant's motion to dismiss.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov