**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Case No. 24-cr-121 (CRC) |
| **STEPHEN BAKER**, | |
| Defendant. | |

**OPINION AND ORDER**

The government has charged Defendant Stephen Baker with four misdemeanors related to his actions on January 6, 2021. Baker moves the Court to dismiss the charges, contending that the government has violated the constitutional prohibition on selective prosecution. In the alternative, he seeks to compel discovery on his selective-prosecution claim. Because Baker fails to demonstrate the required elements of his claim, the Court will deny the motion.

**I.   Background**

The Court has described the events of January 6, 2021, in prior opinions, so it will only provide a brief summary of relevant details here. See, e.g., United States v. Robertson, 588 F. Supp. 3d 114, 118 (D.D.C. 2022), aff'd, 103 F.4th 1 (D.C. Cir. 2023).

On January 6, 2021, at approximately 1:00 p.m., the United States Senate and House of Representatives convened for a Joint Session of Congress at the U.S. Capitol building to certify the Electoral College vote count for the 2020 presidential election. Stmt. of Facts, ECF No. 1-1, at 1. The Capitol was closed to members of the public that day. Id. During the proceedings, a large crowd gathered outside the Capitol. Id. Around 2 p.m., individuals in the crowd forced entry into the Capitol, breaking windows and assaulting U.S. Capitol Police officers. Id. Vice

President Pence and members of the House of Representatives and the Senate evacuated the chambers.  Id.  The breach caused the Joint Session to be suspended until after 8 p.m.  Id.

According to the government, Defendant Stephen Baker was among the crowd that entered the Capitol during the breach.  Closed Circuit Television (CCTV) and Metropolitan Police Department body-camera footage, as well as Baker's own videos, captured him inside the Capitol on January 6.  Id. at 3–4.  Baker and another individual, Edmund Wright, also recounted the events in a video later posted to YouTube.  Id. at 2–3.

Baker approached the Capitol around 1:10 p.m., recording himself saying as he did so, "Look out your windows b**ches, look what's coming."  Id. at 4.  Body-worn camera footage captured Baker disregarding instructions to move off the Capitol steps.  Id. at 5.  Baker then entered the Capitol through the broken Senate Wing door.  Id. at 6.  He told Wright that he entered the Capitol "in the first breach," saying, "I gotta get this too, man."  Id. at 3.  Baker then moved through the Capitol and toward the House Chamber, joining the mob at the barricaded doors to the chamber until tear gas was deployed to disperse the crowd.  Id. at 6.  Officers attempted to keep Baker on the other side of a door jamb, but instead of heeding them, Baker "antagonized them" by repeatedly asking "Are you going to use that [gun] on us?"  Id. at 7.

In a subsequent YouTube video, Baker recounted going into Speaker of the House Nancy Pelosi's office.  Id. at 3.  He expressed approval of the vandalization he witnessed there, saying "[it] couldn't happen to a better deserving b**ch."  Id.  He also stated that "[t]he only thing I regret is that I didn't like steal their computers because God knows what I could've found on their computers."  Id.  He further said in an interview by a local news channel, WUSA 9 news, which used some of his video footage: "Do I approve of what happened today?  I approve 100%."  Id. at 11.

Baker asserts that during most of his time in the Capitol, he recorded video with audio narration. Mot. at 6. He claims to have then published much of this material "on his own as a freelance journalist" and also licensed the content to media outlets including the New York Times and HBO. Id.

On March 7, 2024, the United States Attorney for the District of Columbia filed an information charging Baker with four misdemeanors: entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2), disorderly conduct in violation of 40 U.S.C. § 5104(e)(2)(D) and parading, demonstrating, or picketing in a capitol building in violation of 40 U.S.C. § 5104(e)(2)(G). Trial is scheduled for November 12, 2024.

Baker has moved to dismiss the charges, asserting that the government has selectively prosecuted him based on his political beliefs. The government opposes. The Court will deny Baker's motion.

## II. Legal Standards

"The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quotation marks omitted) (quoting Wayte v. United States, 470 U.S. 598, 607 (1985). "As a result, '[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" Armstrong, 517 U.S. at 464 (quoting United States v. Chem. Found., 272 U.S. 1, 14–15 (1926)).

A prosecutor may not bring charges "for reasons forbidden by the Constitution," however. Id. at 463. Thus, the decision to prosecute "may not be based on an unjustifiable

3

standard such as race, religion, or other arbitrary classification." Id. at 463–64 (citation and quotation marks omitted). The standard to prove a selective-prosecution claim "is a demanding one." Id. at 463. A defendant must offer "clear evidence" showing that the challenged prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 465.

Baker seeks, in the alternative, discovery related to his selective-prosecution claim. "Discovery into the Government's files" in aid of such a claim is "an effort that will divert prosecutors' resources and possibly disclose their strategy." United States v. Judd, 579 F. Supp. 3d 1, 4–5 (D.D.C. 2021) (quotation marks omitted) (quoting Armstrong, 517 U.S. at 468). Thus, "a defendant must present 'at least a colorable claim' of selective prosecution before any discovery is permitted." Judd, 579 F. Supp. 3d at 5 (citation omitted). "A colorable claim is one that presents 'some evidence tending to show the existence of the essential elements' of selective prosecution." Id. (citation omitted). "This 'colorable claim' standard is a 'significant' and 'rigorous' one not easily surmounted.'" Id. (citation omitted).

### III. Analysis

Baker asserts that other journalists who were present in the Capitol on January 6 have not been prosecuted despite engaging in conduct identical to his. Id. at 10–11. He therefore contends that the government is selectively prosecuting him because of his journalism and/or his political views. Because Baker fails to demonstrate that the government's prosecution of him had a discriminatory effect or was motivated by a discriminatory purpose, the Court will deny the motion.

4

*1. Discriminatory Effect*

"To establish discriminatory effect, a defendant must show that the Government afforded 'different treatment' to persons 'similarly situated' to him." United States v. Bennett, No. 21-cr-312 (JEB), 2023 WL 6847013, at *2 (D.D.C. Oct. 17, 2023) (quoting Judd, 579 F. Supp. 3d at 4 (quoting Branch Ministries v. Rossotti, 211 F.3d 137, 145 (D.C. Cir. 2000)). "[O]ur Circuit interprets the phrase 'similarly situated' narrowly: defendants are similarly situated only when their "circumstances 'present no distinguishable legitimate prosecutorial factors that might justify' different prosecutorial decisions between" them. Bennett, 2023 WL 6847013, at *2 (citations omitted). To obtain discovery, Baker must make a "credible showing" of differential treatment.

Baker comes nowhere close to making that showing here. He emphasizes that he acted as a freelance journalist on January 6 and says he has identified other journalists who have not been prosecuted for similar conduct. Mot. at 8; see Def.'s Ex. A, ECF No. 40. But as the government points out, Baker provides almost no information about these comparators or their conduct on January 6. See Opp'n at 8–9. As to all but one, Baker identifies only their initials and the name of their employer. Def.'s Ex. A. Baker offers no details relevant to these journalists' "relative culpability, the strength of the case against [them], willingness to cooperate, [or] the potential impact of a prosecution on related investigations." United States v. Khanu, 664 F. Supp. 2d 28, 32 (D.D.C. 2009). The Court therefore cannot assess whether they are "similarly situated" to Baker.

In his reply, Baker identifies one specific freelance journalist, Luke Mogelson, who was not prosecuted and who Baker asserts is similarly situated.[1]  Reply at 3–4.  To describe Mogelson's conduct, Baker relies almost entirely on a story Mogelson published nine days after January 6 in the New Yorker magazine, titled Among the Insurrectionists.[2]  Based on the Court's review of this article, Mogelson appears to have entered the Capitol on January 6 to document the protest.  Mogelson writes that "a jet of pepper spray incapacitated" him and upon recovery, he followed a crowd member "onto an open terrace on the Capitol's main level" and along a side corridor guarded by Capitol police officers.  Luke Mogelson, Among the Insurrectionists, New Yorker Magazine (Jan. 15, 2021).  Mogelson also watched rioters rifle through desks in the Senate chamber while a policeman asked them to leave.  Id.  Throughout the article, Mogelson expressed disapproval of the crowd's actions, describing January 6 as a "violent and chaotic" event in which "Americans had held democracy hostage in the name of patriotism."  Id.

True, there are some similarities between Mogelson and Baker.  And if the only difference between them was that Baker praised the January 6 rioters while Mogelson censured them, Baker's claim might have some legs.  But Mogelson's conduct differed from Baker's in important ways.  Unlike Baker, Mogelson did not disregard the instructions of Capitol police or antagonize them by repeatedly asking, "Are you going to use that [gun] on us?"[3]  Stmt. of Facts

---

[1] Baker acknowledges that there were some pre-approved journalists "authorized to enter the Capitol" but asserts without support that Mogelson was not among them.  Reply at 5.  Because Mogelson is, in any event, not similarly situated to Baker for the reasons described, the Court will assume that Mogelson was not pre-authorized to enter the Capitol.

[2] Baker's motion also states that he included a video of Mogelson's travels inside the Capitol as an exhibit to his reply, but no video was filed.

[3] Although Baker characterizes this comment as nothing more than an "earnest question," Reply at 6, the statement of facts supporting the information describes him repeatedly asking the

at 7.  Mogelson did not tell those inside the Capitol to "Look out your windows b**ches, look what's coming" as he approached.  Id. at 4.  Nor did Mogelson express regret that he did not "steal the[] computers" in Representative Pelosi's office.  Id. at 3.  And Mogelson did not subsequently express approval of the events at the Capitol as Baker did.  Id. at 11.  These alleged statements paint Baker as an "active participant" in the events of January 6, not a "passive observer," which bears on his "relative culpability."  Khanu, 664 F. Supp. 2d at 32; Opp'n at 10.

Baker replies that the Government's focus on his comments on and after January 6 suggest that his prosecution is based on "political animus and bias."  Reply at 7.  But Baker's statements during and after January 6 "bear on his [] intent" and thus increase the "strength of the case against" him.  Bennett, 2023 WL 6847013, at *3.  Two of the charged misdemeanors require the government to prove that Baker engaged in unlawful conduct "with the intent to impede, disrupt, or disturb the orderly conduct of" Government business.  40 U.S.C. § 5104(e)(2)(D); 18 U.S.C. § 1752(a)(2).  Baker's statements during and after January 6 are relevant to whether he intended to disrupt the Joint Session by entering the Capitol, and legitimately bear on the government's decision to charge him.

And even if Baker's comments could not be considered, the Court would not conclude that he is similarly situated to Mogelson.  Unlike Baker, Mogelson did not disobey or antagonize Capitol police officers.  Instead, he appears to have observed and recorded interactions between officers and protesters without engaging either side.  See Among the Insurrectionists.

---

question and "antagoniz[ing]" the officers, and the Court "must accept as true" "the facts alleged in the indictment" when considering a motion to dismiss.  Khanu, 664 F. Supp. 2d at 32.

The Court therefore finds that Baker is not similarly situated to Mogelson. "Absent such a showing, Defendant's selective-prosecution challenge fails." Bennett, 2023 WL 6847013, at *3.

2. *Discriminatory Purpose*

Baker's motion independently fails because he "cannot prove that his prosecution was motivated by a discriminatory purpose." Bennett, 2023 WL 6847013, at *3. Baker claims that the government chose to prosecute him because of his subsequent reporting criticizing the government, including on "whether DOJ put on perjured testimony by a U.S. Capitol Police," "an apparent pipe bomb at DNC headquarters" on January 6, and the "likely sanitation" of U.S. Capitol Police officials' personnel files. Mot. at 7. He also argues that the government chose to prosecute him because of his political views. Id. at 10. But "[h]e proffers no evidence to support this claim," "only mere speculation of the Government's improper motivation." Bennett, 2023 WL 6847013, at *3. And he may not "rely on 'personal conclusions based on anecdotal evidence.'" Judd, 579 F. Supp. 3d at 5 (quoting Armstrong, 517 U.S. at 470). Baker cites no evidence linking his reporting or his political views to the government's decision to prosecute him. And the complaint makes no mention of his journalism or his political views (other than his statements concerning January 6, which are relevant to his charged conduct as discussed above). See Stmt. of Facts.

The government explains that it chose to prosecute Baker because he "knowingly trespassed and joined a mob bent on disruption" and was "an active participant, happily encouraging the mob to proceed forward." Opp'n at 10. As the Court has noted, Baker's own statements, as recounted by the government, tend to support that explanation. Baker's unfounded speculation that his prosecution was improperly motivated therefore fails. Nor, for

the same reasons, has he made a credible showing of selective prosecution sufficient to support discovery on his claim.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 39] Defendant's Motion to Dismiss is DENIED.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 25, 2024