UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 24-cr-121-CRC |
| v. : | |
| : | |
| STEPHEN BAKER, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
GOVERNMENT'S EXHIBITS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests this Court overrule the defendant's objections as the proffered exhibits are admissible.

On October 22, 2024, the government provided the defendant with an exhibit list as well as 82 numbered electronic files pursuant to this Court's June 7, 2024, order. *See* ECF No. 27. The government did not receive exhibits from the defendant. On November 1, 2024, the defendant provided objections to specific exhibits as well as a blanket objection to any video being admitted without first being played in court. ECF No. 53. Because each of the numbered exhibits is relevant to this Court's determination of guilt, and the proposed procedure suggested by the defendant does not increase the effectiveness for determining the truth, this Court should allow the exhibits to be admitted and consider them in their entirety no matter how much is played in court.

**I.  Legal Standard**

The Federal Rules of Evidence require a court to "decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by the evidence rules, except those on privilege." Fed. R. Evid. 104(a). For an exhibit to be admitted, the proponent of

the evidence must show by a preponderance of the evidence that any necessary prerequisites for admission have been met. *Bourjaily v. United States*, 483 U.S. 171, 176 (1987).

The Rules allow for the admission of relevant evidence. Importantly, "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. Evidence is relevant if, "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The defendant here is charged with four misdemeanor offenses stemming from his conduct at the United States Capitol on January 6, 2021.

Further, the Rules provide that "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence . . . ." Fed. R. Evid. 611(a). The Court should "(1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." *Id*.

In two of the offenses charged in the information, the defendant is charged with disorderly conduct. The Court of Appeals in *United States v. Alford*, 89 F.4th 943 (D.C. Cir. 2024) reasoned, "whether conduct qualifies as disorderly depends on the surrounding circumstances." 89 F.4th at 949. Further, "conduct is disorderly if, viewed in the circumstances in which it takes place, it is likely to endanger public safety or create a public disturbance." *Id*. at 950. The same is true for whether conduct is disruptive.

## II.     Specific Objections

The majority of the defendant's objections relate to the length of each exhibit. But the crimes charged relate to the defendant's entry into a restricted area, and then remaining within the

area, during the span of approximately five hours. If the exhibits are long, it is because the defendant's criminal actions were too.

### a. The objection to Gov. Ex. 106

The defendant argues that government's exhibit 106 is not relevant. Exhibit 106 is a 15-and-a-half-minute video montage showing an overview of the events that occurred at the Capitol on January 6, 2021. The exhibit was also the subject of a motion *in limine* filed by the government on August 30, 2024. ECF No. 36. The defendant did not file an opposition within 14 days as required by this Court's Pre-Trial order. *See* ECF No. 27, p. 1, ¶ 4.

The government will refrain from recreating its motion *in limine*, and instead will briefly note that this Court, as the finder of fact, will need to determine the defendant's conduct in the context of the events on January 6, 2021. Because the defendant's conduct did not occur in a vacuum, the montage exhibit contains evidence that not only places the defendants conduct in context, but also makes it more likely that the defendant was disorderly or disruptive either within a restricted area or within the Capitol grounds. The defendant's conduct depicted in other exhibits was occurring at the same time as the events within exhibit 106. Although the presence of the defendant within the exhibit does not make it any more or less admissible, the defendant is also depicted within exhibit 106 at the 6:08 mark as rioters push past a line of officers in the Crypt. The defendant's actions occurred contemporaneously to those of others and a 15-and-a-half-minute montage is the most efficient way to present the larger context of a more than four-hour riot and breach of the Capitol Building. The exhibit is admissible.

### b. The objections to Gov. Ex. 207, 209, 210, 212, 218, 501, 502, 612, and 704.

It is unclear the basis of the defendant's objections to Government's exhibit 207, 209, 210, 212, 218, 501, 502, 612, and 704. The defendant does not cite a rule of exclusion. Instead, he

objects to each exhibits entirety except where the defendant is shown. While "wasting time" is one of the considerations for this Court under Fed. R. Evid. 403, the time "wasted" must be substantially outweigh the probative value of each exhibit. *See* Fed. R. Evid. 403. In the present case, each of these challenged exhibit displays the defendant's actions and the context in which they happened and only for a short time before the defendant is visible.

Exhibit 207 is Capitol Police surveillance camera footage from inside an area of the Capitol known as the Crypt. The exhibit is 5 minutes long, and is time stamped. At the clip's start at 2:21 p.m., a line of police officers are holding back a crowd of individuals in the circular space. At approximately 0:24 seconds into the exhibit, the defendant enters the room. For nearly 3 minutes the defendant pushes through the crowd slowly from right to left and is lost behind a statue briefly at approximately 2:55 second into the exhibit. Approximately 30 seconds later the defendant is no longer visible; however, the exhibit captures the crowd pushing through the line of officers approximately 45 seconds later—events the defendant would have surely experienced.

Exhibit 209 is another 5-minute clip of Capitol Police surveillance footage that is time-stamped and begins at 2:27 p.m. The beginning of the exhibit captures the crowd pushing through another line of officers. The defendant himself enters the left side of the screen at approximately 1:33 into the clip. At approximately 1:45 into the clip, the group—including the defendant—is pushed back by the officers. The defendant moves towards the Memorial Door at approximately 2:50, but instead of exiting the Capitol he walks up the stairs up towards the Rotunda. The defendant's choice in that moment makes it more likely the defendant knowingly remained in a restricted area, and thus goes directly to an element of the charged crimes.

Exhibit 210 is a 5-minute clip of Capitol Police Surveillance depicting the Rotunda. The defendant enters the Rotunda at approximately 11 seconds into the clip. The defendant walks along

the east side of the rounded room before stopping inside a roped pathway. The defendant then moves south toward Statuary Hall. The defendant leaves the Rotunda at approximately 2:55 into the clip but can still be observed cutting through the crowd into the Speaker's suite of offices until approximately 3:12. At approximately 4:10 he is visible once more and moves into Statuary Hall.

Government's exhibit 212 is a 12-minute clip of the United States Capitol Police Surveillance footage. At approximately 30 seconds into the exhibit the defendant can be observed at the far end of the hall walking toward the camera. The defendant exits approximately 30 seconds before the clip ends. But the remainder shows other individuals reacting to the chemical irritant that the defendant walked through.

Exhibit 218 is a 12-minute clip of the United States Capitol Police surveillance footage outside on the East Front of the Capitol. At approximately 29 seconds the defendant can be observed for approximately 1 minute. The defendant then reappears from the left side of the frame and walks up the stairs to the right edge of the frame beginning at approximately 3:52 through 4:36. At approximately 7:47 the camera angle shifts, and the defendant can be observed on the stairs leading back inside toward the House Chamber. The defendant is pacing on the stairs until approximately 10:50 when he ascends the stairs back towards the door. The defendant disappears into a crowd near the door shortly before the clip ends.

Exhibit 501 is an 11-minute clip of body-worn camera footage from the perspective of Metropolitan Police Department Officer R.B. The clip is time stamped and begins just before 1:15 p.m., with the officer arriving to the Capitol's Lower West Terrace. It shows the officer join the hastily formed police line to keep rioters out of the building and depicts multiple officers, wearing high-visibility jackets, working to create and defend that line while the officer walked from south to north. The clip allows the factfinder to observe the line through the perspective of an individual

on the line. Importantly, through the exhibit, this Court will also get to *hear* the events around the defendant when he arrived at that police line. The defendant can be observed at approximately 6:50 climbing the steps towards the officers where he is then directed to leave the steps. He does not. *See* ECF 1-1 p. 5 (Statement of Facts *Figure 4*). Through the exhibit, this Court will also see other individuals reacting to the chemical irritants deployed at that time. The exhibit shows the sights and sounds of what the defendant would have experienced and makes it more probable that the defendant knowingly entered or remained within a restricted area.

Exhibit 502 is a 7-minute-50-second clip of body-worn camera footage from the perspective of Metropolitan Police Department Lieutenant J.M. The clip is also time-stamped and begins at approximately 6:24 p.m. The clip shows members of the D.C. National Guard forming a line on the Capitol grounds in the evening hours of January 6, 2021. The defendant can be first seen briefly at the 40 second mark of the exhibit. Then more fulsomely at approximately 1:06. The defendant is the only individual standing inches from the line of National Guard members. The clip continues to show the line moving rioters away from the building, and the defendant continues to get close to the National Guard. At approximately 3:35, the BWC footage contains an individual with a camera pointed at the defendant's interaction with the police line. At trial, the government will argue that the recording created by that individual with the camera is exhibit 704.



*Figure 1:* Left: screen capture from exhibit 502; Right: Screen capture from exhibit 704. (yellow box added for reference)

Exhibit 502 will make it more probable to that the defendant's actions were intentional as the exhibit depicts the defendant aggressively squabbling with members of the National Guard.

Exhibit 612 is a 14-minute-34-second clip depicting the interview the defendant gave to WUSA9 in between his afternoon and evening trips to the Capitol on January 6, 2021. In it, the defendant explains that he was attempting to get as close as possible to what was going on. He explains that he "took some pepper spray, took some gas, got hit by a concussion grenade" and yet his decision to enter was still his "personal decision." He explained that he observed an aggressive attempt to breach the line into the Capitol and that he was within that first group of people into the building. The defendant has difficulty stopping a laugh when he discusses the damage observed within the Speaker's office. During this interview, the defendant states, "I was quite excited to see this going on, now I'll go so far as to say that the next time it probably won't be so peaceful" and, "Do I approve of what happened today? I approve 100%." ECF No. 1-1 p. 11 (Statement of Facts *Figure 12*). Although the clip follows an 'interview format,' the questions by the interviewer are admissible to provide context to the answer the defendant gives. In other words, the interview should not be limited to just when the defendant is speaking as there would be times when it would be unclear what question the defendant is answering.

As mentioned above, exhibit 704 is an open-source video depicting the evening hours of January 6, 2021, near Peace Circle. The defendant can be first seen within the exhibit at approximately the :45 second mark. There he is facing a line of National Guard soldiers attempting to clear the Capitol grounds. The early portion shows the line move towards the camera, and the defendant moving back. However, as soon as the line stops, the defendant returns to within inches of the line. The exhibit captures some of what the defendant told the soldier. He said, "every single special forces guy I know in Bragg, that's where I live, would be very disappointed in you [soldier's name]." Although the camera does not stay fixed, the defendant can be observed within the frame throughout the exhibit. First seen at approximately :55, the defendant's last appearance in the exhibit is at the 7:44 mark, where he can be seen smoking a cigar.

    **c.  The defendant's objection to Gov. Ex. 301 and 302.**

The defendant objects on relevance grounds to Exhibits 301 and 302, which are video clips related to the Vice President's presence at the Capitol on January 6, 2021, and the Secret Service's reaction to the riot. Exhibit 301 is a 1-minute-18-second clip depicting rioters entering into the Capitol through open-source video and United States Capitol Police surveillance footage, with Secret Service radio transmissions overlayed. Exhibit 301 ends where exhibit 302 begins. Exhibit 302 is a 33-second clip of Capitol Police Surveillance depicting the Vice President being escorted out of the Senate Chamber. The exhibit is time-stamped and displays an approximate time of 2:26 p.m. when the Vice President leaves the chamber. The defendant objects, arguing each exhibit is not relevant.

Both counts 1 and 2 of the information charge the defendant with committing offenses related to a "restricted building or grounds." *See* ECF No. 8 (Information). In *United States v. Griffin*, ___ F.4th ____ (D.C. Cir 2024), the Court of Appeals determined, "The government [is]

not required to prove that [a defendant] was aware that the Vice President's presence was the reason the grounds remained restricted." 2024 WL 4536993 at *2. But the government must still prove that the restriction was in place at the time of the offense, whether the defendant knew or not. The area is restricted, "where . . . [a] person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). Testimony at trial will establish that the Vice President, on January 6, 2021, was a protectee of the United States Secret Service.

Additionally, count 2 requires the government to prove that the defendant's conduct did in fact impede or disrupt the orderly conduct of government business or official function. 18 U.S.C. § 1752(a)(2). The exhibits make more probable that government business or official function—namely the actions of the United States Secret Service—were impeded or disrupted.

### d.  The defendant's objection to Gov. Ex. 415

The defendant also objects on relevance grounds to Exhibit 415, which is a 4-minute-22-second video clip taken by the defendant himself. The metadata from the clip suggests the recording began at 5:34 p.m., and the content begins with a line of police officers pushing the defendant from the restricted grounds during the evening hours. At the beginning of the clip, snow fencing along the ground can be observed flat on the grassy area. This "interior line" of snow fencing was still present—albeit not standing—while the defendant was being pushed out. At approximately :30 seconds, the defendant asks the officers, "Is this the new line?" The push continues.

At approximately 1:39, an "exterior line" of snow fencing is still present—albeit broken—demarking the outside of the restricted perimeter along the Maryland walkway. The Maryland walkway is the path the defendant took to enter the restricted grounds. The camera then remains in the officers' faces as they form a physical barrier between the Capitol and the defendant. At one

point, the defendant is pushed away by an officer, but still returns. The defendant decries, "How many more times are you going to push me? Are you going to hit me with that thing?" Exhibit 415 is relevant evidence of the defendant's conduct and state of mind on January 6, 2021. The evidence at trial will show that the defendant first passed the Garfield Monument at approximately 1:16 p.m. After leaving the building and the grounds, he recorded an interview with WUSA9 off the grounds, but then at some point returned to enter the restricted area again. Specifically depicted within this exhibit are the remanent of those lines of snow fencing the defendant would have had to cross twice, as well as his aggressive conduct towards police while in—or alongside—the restricted area (and while on Capitol grounds). The displayed conduct makes it more probable that his acts were disruptive, knowing, and intentional.

### e. The defendant's objections to Gov. Ex. 701 and 702.

Finally, the defendant objects to exhibits 701 and 702 on the basis of hearsay. Exhibit 701 is a 9-minute-29-second video clip of the remarks as given by Donald Trump Jr. on the morning of January 6, 2021. Part of this speech is recorded by the defendant and is depicted within exhibit 401. Exhibit 702 is a 1-hour-11-minute-42-second video clip of the remarks as given by Donald Trump on the morning of January 6, 2021. In differing interviews, the defendant explains that he left the speech "halfway through." The defendant incorrectly argues each is hearsay.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial . . . and (2) *a party offers in evidence to prove the truth of the matter asserted in the statement*." Fed. R. Evid. 801(c) (emphasis added). "An out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c)." *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002).

The government does not intend to offer these statements for the truth of the matter, but rather to show the effect on the listener (the defendant), including his knowledge of what was happening in Congress that day. They are thus relevant evidence for count three, in which the defendant is charged with violating 40 U.S.C. § 5104(e)(2)(D), which prohibits disorderly or disruptive conduct *with the intent* to impede, disrupt, or disturb the orderly conduct of a session of Congress.

### III. The Defendant's objection/motion to only admit exhibits that are played in open court.

Trial courts have tremendous discretion as it relates to playing video exhibits or reviewing evidence. Some considerations in determining its procedure require a court to, "(1) make those procedures effective for determining the truth; [and] (2) avoid wasting time . . .." Fed. R. Evid. 611(a). The defendant's blanket objection requests a procedure where "admitted" exhibits are only those which are played in open court. But he cites no rule or case requiring that such a procedure is mandated, or even needed. Further, he does not explain how this potential waste of time would benefit this Court's determination of the truth. Such a procedure is not needed here.

Unlike the taking of testimony, which has a specific rule requiring it in open court (*See* Fed. R. Crim. P. 26), exhibits that have been admitted into evidence can be considered by a factfinder at its leisure, whether in a jury room or in a judge's chambers. The protection of which exhibits to be considered is the process of admitting them, not of playing them.

This Court ordered, "All exhibits are to be marked in advance of trial and listed in order on the exhibit form obtained from Courtroom Deputy Clerk . . .." ECF No. 27 p. 3. On October 22, 2024, as ordered by this Court, the government numbered its video exhibits and provided them to the defendant. The parties were then ordered to "file objections to the admissibility of exhibits to the extent practicable by November 1, 2024." *Id*. The Court also requires evidentiary issues "be

11

discussed between counsel no later than the night before the witness or exhibit is to be offered. . .. The Court will discuss and rule during the time for preliminary matters each morning. In this way the jury will not be kept waiting while legal issues are discussed and resolved." *Id.* at 6-7.

This Court has already ordered evidentiary issues to be resolved prior to presenting any exhibits, which is contrary to a framework requiring *only those portions* played in court to be admitted. In other words, this Court ordered the parties to do their work on the front-end to not waste the Court's time.

Much like in other trials, the government intends to use its exhibits in this case as both substantive proof of the defendant's guilt, and to provide context to each witness's testimony. There will also be instances where exhibits overlap making the defendant's requested procedure would make the admission of overlapping exhibits clunky and consume time needlessly. Requiring the government to play the entirety of one exhibit, before the witness can testify about another, would waste everyone's time.

On balance, the defendant asks this Court to require the government to play the entirety of each of its video exhibits for them to be admitted into evidence. One possible solution could be to schedule the first four hours of the proceeding for the parties—and this Court—to sit in open court and watch the entirety of each video exhibit one-by-one before calling any witnesses. But the absurdity of such a movie marathon prior to the calling of any witness in court demonstrates the absurdity of the defendant's request. Instead, this Court should continue with what it has already ordered—the parties spend the four hours it would take to observe the video exhibits *prior to coming to Court* and hash out any objections before they are presented during testimony.

## IV. Conclusion

The Court should overrule the defendant's objections to the government's exhibits.

        Respectfully Submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   /s/ *Adam M. Dreher*
        ADAM M. DREHER
        Assistant United States Attorney
        Michigan Bar No. P79246
        601 D St. NW
        Washington, D.C. 20530
        (202) 252-1706
        adam.dreher@usdoj.gov

        MONIKA (ISIA) JASIEWICZ
        Assistant United States Attorney
        D.C. Bar No. 1024941
        601 D St. NW
        Washington, D.C. 20530
        (202) 714-6446
        isia.jasiewicz@usdoj.gov